[L. A. No. 8040. In Bank.—February 14, 1925.]

In the Matter of the Estate of WILLIAM A. STEEHLER,
    Deceased. ROSE H. STEEHLER, as Administratrix,
    etc., et al., Appellants, v. RAY L. RILEY, as Controller,
    etc., Respondent.

[1] INHERITANCE TAX LAW—FAMILY ALLOWANCE—STATUTORY CON-
    STRUCTION.—In dealing with the question as to whether the statute
    imposes a tax upon family allowances in the settlement of estates
    of deceased persons, the rule that statutes imposing taxes upon
    the persons or property of individuals for public purposes are to
    be strictly construed in favor of the individual and against the
    state, should be applied.

[2] ID. — INHERITANCE TAX ACT OF 1917 AND AMENDMENT OF 1921—
    CONSTRUCTION.—Under the Inheritance Tax Act of 1917 (Stats.
    1917, p. 880), as amended in 1921 (Stats. 1921, p. 1500), family
    allowances made in the estate of a deceased person to the widow
    and minor children are not taxable.

[3] ID.—EXEMPTIONS—STATUTORY CONSTRUCTION.—In dealing with the
    exemptions provided for in the Inheritance Tax Law its provisions
    should be construed liberally in favor of the state and strictly as
    to those claiming the benefit of such exemptions.

[4] STATUTORY CONSTRUCTION—CONFLICTING PROVISIONS OF STATUTES
    —LEGISLATIVE INTENT—RULE.—When two provisions in a statute
    are found to be irreconcilable the one last adopted is to be given
    effect as the latest expression of the legislative intent, but this is
    a rule of necessity and should not be given application unless and
    until it shall be made to clearly appear that such irreconcilable
    conflict between the earlier and the later provisions of the law
    exists.

[5] INHERITANCE TAX LAW—EXEMPTIONS—DEDUCTIONS—APPLICATION
    OF RULE.—Exemptions are but deductions from the whole of the
    estate of a deceased person transferred and are important as
    affecting the inheritance tax to be computed only when the bases

1. Succession tax upon property received by a spouse as dower,
curtesy, statutory homestead or allowance, notes, Ann. Cas. 1913A,
167; Ann. Cas. 1918D, 1094; 29 L. R. A. (N. S.) 428; L. R. A. 1916C,
675. See, also, 26 R. C. L. 233.

3. See 26 R. C. L. 313.

4. See 25 R. C. L. 1064.

5. Whole estate or individual shares as basis of computation of
inheritance tax, notes, 7 A. L. R. 695; 11 A. L. R. 825.

of computation of such tax upon the remainder of such property are to be affected by such deduction.

[6] ID.—BURDENS OF TAXATION—UNIFORMITY—STATUTORY CONSTRUCTION.—Where two interpretations of the provision of a statute imposing taxes are urged, that one should, if possible, be adopted which lays the burden of taxation uniformly upon those who bear that burden and who stand in the same degree with relation to the tax, and a like rule would apply to those who stand in the same degree with regard to their statutory right, if any, to exemption from the burden of the tax.

[7] ID.—EXEMPTIONS—METHOD OF DEDUCTION.—In computing amounts taxable to the widow and daughter of a deceased person it is proper, in each case, to deduct the exemption of $24,000 allowed by law from the first $25,000 taxable at one per cent under the terms of the Inheritance Tax Act of 1921, instead of deducting each of said exemptions from each of the aggregate amounts of property transferred and taxing each remainder, after making such deductions, at the rate at which it would have been taxed had no exemptions been allowed.

---

(1) 37 Cyc., p. 1556, n. 76.    (2) 37 Cyc., p. 1570, n. 85.    (3) 37 Cyc., p. 1570, n. 85.    (4) 36 Cyc., p. 1076, n. 35, 39.    (5) 37 Cyc., p. 1569, n. 75.    (6) 37 Cyc., p. 1557, n. 80.    (7) 37 Cyc., p. 1576, n. 31.

APPEAL from an order of the Superior Court of Los Angeles County fixing inheritance taxes. Victor R. McLucas, Judge. Partly reversed and partly affirmed.

The facts are stated in the opinion of the court.

Hunsaker, Britt & Cosgrove and John N. Cramer for Appellants.

Ralph W. Smith, State Inheritance Tax Attorney, Wesley E. Martin, Assistant State Inheritance Tax Attorney, Dion R. Holm, Erwin P. Werner, Adrian C. Stanton and Ida V. Wells for Respondent.

RICHARDS, J.—This appeal is by the administratrix and heirs of William A. Steehler, deceased, from an order of the superior court of Los Angeles County, confirming the report of the inheritance tax appraiser and fixing the amount of inheritance tax to be paid by the widow and minor daughter of said deceased. The facts of the case are conceded to

be correctly set forth by the appellants in their opening brief and are as follows: William A. Steehler died intestate in Los Angeles County on August 28, 1921, leaving a widow, Rose H. Steehler, and a minor daughter, Rosemary Hastings Steehler, as his only heirs at law. The estate, which was appraised at about $229,000, consisted entirely of personal property. Letters of administration were issued to the widow by the superior court of the county of Los Angeles. Pursuant to orders of that court, she paid, as administratrix, to herself as widow, sums awarded as a family allowance, aggregating $12,600. In due course the state inheritance tax appraiser filed her report. She did not deduct any of said sums paid as a family allowance in order to determine the clear market value of said property, but, having computed the market value at a sum including the family allowance, she then deducted the sum of $10,800 (the amount which had been paid as family allowance to the date of the report), in order to, and "only in order to add said sum of $10,800 to said taxable estate and thus tax said sum to the said Rose H. Stechler, widow, and Rosemary H. Steehler, minor daughter," in the proportions of two-thirds and one-third respectively. Having ascertained in the manner above indicated the amount of taxable property passing to the widow and daughter, the inheritance tax appraiser computed the tax in each instance by deducting the statutory exemption of $24,000 from the first $25,000 taxable to the distributee at one per cent "instead of from the distributive share as a whole." Objections were filed to the report of the inheritance tax appraiser on the grounds: (1) That she erred in failing to deduct the amount paid as a family allowance and in holding that the same was taxable in the proportions of two-thirds and one-third, respectively, against the widow and daughter; (2) that she erred in computing the amounts taxable to the widow and daughter, in each case, by deducting the exemption of $24,000 allowed by law from the first $25,000 taxable at one per cent under the terms of the Inheritance Tax Act of 1921, instead of deducting each of said exemptions of $24,000 from each of the aggregate amounts of property transferred, respectively, and taxing each remainder, after making such deductions, at the rates at which it would have been taxed had no exemptions been allowed. The court overruled said objections and confirmed

the report of the inheritance tax appraiser, holding that the family allowance was taxable, adopted the method of calculation employed by the inheritance tax appraiser, and fixed the total tax due from the widow and daughter at $5,789.44. It is from this order that appellants prosecute this appeal. They renew their aforesaid objections upon this appeal. They contend: First, that a family allowance is not taxable under the terms of the Inheritance Tax Act of 1917 as amended in 1921, which act was in force at the date of the decedent's death; second, that the $24,000 exemptions to which the widow and daughter of said decedent were and are entitled should have been deducted from the aggregate amount of property distributable to each heir rather than from the first $25,000, as was done by said appraiser and approved by said court. [1] In making each of these contentions the appellants invoke the well-established rule that statutes imposing taxes upon the persons or property of individuals for public purposes are to be strictly construed in favor of the individual and against the state. The respondent, while not denying the rule or opposing the authorities urged in its support, insists that it is not to be given application to the portion of the inheritance tax law which relates to the exemption from or inclusion of family allowances within the provisions of said law, for the reason that the appellants herein are seeking to claim the benefit of an exemption from a tax upon inheritance, the right to which inheritance is itself wholly statutory, and since exemptions from taxation are not favored by law the rule as to strict construction is to be applied to those seeking the exemption and not to the general terms of the act, which should be liberally construed in aid of the legislative intent, citing *Cornett's Exrs.* v. *Commonwealth,* 127 Va. 640 [105 S. E. 231]; *In re Ferrel's Estate,* 112 Wash. 231 [11 A. L. R. 820, 192 Pac. 12]; Dos Passos on Inheritance Tax Law, 2d ed., p. 74; *Estate of Bull,* 153 Cal. 715 [96 Pac. 366]. In each of these cases above referred to, however, the courts, and in the case of the text-book citation the author, were dealing with express exemptions in statutes otherwise generally imposing inheritance taxes; and the appellants point out, and we think correctly, that in this branch of the case we are not dealing with the exemption clauses in the statute, but are dealing with the question as to whether the statute

in fact imposes a tax upon family allowances, and that to such a case the general rule applies; and they cite in support of this view the cases of *Estate of Potter*, 188 Cal. 64 [204 Pac. 826] , *McDougald* v. *Boyd*, 172 Cal. 753 [159 Pac. 168], and other earlier decisions of this court and which we think justify the application of the rule of strict construction to the provisions of the inheritance tax law here under review.

The provisions of the act of 1917 (Stats. 1917, p. 880), relating to inheritance taxes and which were carried into the act of 1921 (Stats. 1921, p. 1500), which amended said former act without change in the particular respect important to the consideration of the questions presented upon this appeal, read as follows:

"Sec. 1. (3) The word 'transfer' as used in this act shall be taken to include the passing of property or any interest therein, in possession or enjoyment, present or future, by inheritance, descent, devise, succession, bequest, grant, deed, bargain, sale, gift, or appointment in the manner herein described.

"Sec. 2. A tax shall be and is hereby imposed upon the transfer of any property, real, personal or mixed, or of any interest therein or income therefrom in trust or otherwise, to persons, institutions or corporations, not hereinafter exempted, to be paid to the treasurer of the proper county, as hereinafter directed, for the use of the state, said taxes to be upon the market value of such property at the rates hereinafter prescribed and only upon the excess over the exemptions hereinafter granted, in the following cases:

" (1) When the transfer is by will or by the intestate or homestead laws of this state, from any person dying seized or possessed of the property while a resident of the state, or by any order of court setting apart property pursuant to article one, chapter five, title eleven, part three of the Code of Civil Procedure."

In the attempt to so interpret the foregoing provisions of the act of 1917 as to support the conflicting claims of each of the parties to this appeal their respective counsel have chosen to consider the language of the statute above quoted as sufficiently uncertain as to its meaning to require a reference to the provisions of the several earlier acts imposing inheritance taxes in this state and to our decisions construing the same for the purpose of shedding light upon the proper interpre-

tation of the foregoing provisions of the act here under review. · We shall therefore pursue a similar inquiry.

By the inheritance tax law of 1905 (Stats. 1905, p. 341) it was provided in section 1 thereof:

"All property which shall pass by will or by the intestate laws of this state from any person who may die seized or possessed of the same while a resident of this state . . . to any person or persons or to any body politic or corporate in trust or otherwise . . . shall be and is subject to a tax hereinafter provided for" etc.

The interpretation of the foregoing provision of said statute came before this court for decision in the case of *Estate of Kennedy*, 157 Cal. 517 [29 L. R. A. (N. S.) 428, 108 Pac. 280], in which case the trial court, after making an order for family allowance under the provisions of section 1466 of the Code of Civil Procedure, and after making an order under section 1465 of the same code designating, selecting, and setting apart a probate homestead to the widow, was called upon to fix the amount of the inheritance tax under the statute of 1905. In so doing the court deducted from the whole value of the estate subject to such tax the amount of the family allowance ordered and paid, but refused to deduct the value of the property set apart as a probate homestead. There were separate appeals, the treasurer of the city and county of San Francisco appealing from that portion of the court's order refusing to impose the inheritance tax upon the family allowance, and the widow appealing from the portion of said order subjecting the homestead to said tax. In passing upon both appeals in the same decision this court held that neither the family allowance nor the probate homestead "passed by will or by the intestate laws of this state," and hence that neither of said forms of property was subject to the inheritance tax under the provisions of said statute. The decision in said case was handed down in April, 1910. The legislature in 1911, with the decision of the Kennedy case obviously in mind, amended section 1 of the act of 1905 to read in part as follows:

"Section 1. A tax shall be and is hereby imposed upon the transfer of any property . . . or of any interest therein or income therefrom . . . in the following cases:

"(1) When the transfer is by will or by the intestate or homestead laws of this state, from any person dying seized

or possessed of the property while a resident of this state or by any probate homestead act set apart from said property.'' (Stats. 1911, p. 713.)

It would seem clear that in thus amending the former statute the legislature, while expressly intending to subject homesteads, both statutory and probate, to an inheritance tax, did not intend to include within the terms of said statute family allowances. Two years later, however, the legislature adopted a new inheritance tax law, revising its prior legislation upon the subject and expressly repealing its former acts, and particularly the act of 1911. In so doing, however, it adopted without change the verbiage of section 1 of the act of 1911, except as to the numbering thereof, making it section 2 of the new act. In subdivision (c) of section 1 of the new statute it undertook to define the word ''transfer'' as used in said act as follows: ''(c) The word 'transfer' as used in this act shall be taken to include the passing of property or any interest therein, in possession or enjoyment, present or future, by inheritance, descent, devise, succession, bequest, grant, deed, bargain, sale, gift or appointment in the manner herein described.'' The legislature also in reframing section 4 of said act inserted the following significant provision: ''The tax so imposed shall be upon the market value of such property at the rates hereinafter prescribed and only upon the excess over the exemptions hereinafter granted; and provided that in determining said market value *no deduction shall be made* for any family allowance *made out of said estate.*'' (Stats. 1913, pp. 1066–1069.) The effect of the incorporation of this provision in section 4 of said act which has relation to the lien imposed by and the method and procedure for the collection of inheritance taxes would apparently be that of imposing the burden of the tax *not* upon the person or persons receiving the family allowance, but upon those persons to whom the property of the estate was otherwise transferred under the terms of section 2 of said act, which, as we have seen, did not, under the former act, include family allowances, and hence cannot be held to have done so under section 2 of the act of 1915, which took over said section of the former act without any change in the verbiage thereof. The legislature of 1915 undertook to make several amendments to the act of 1913, but made no change in the wording of those portions of sections 1, 2,

or 4 to which reference has above been made. The legislature of 1917 again undertook to enact a new inheritance tax law and to repeal the act of 1913 and all later amendments thereof. It adopted the definition of the term "transfer" as given in said former act and also adopted much of the language of section 2 of said act. It, however, materially modified the language of subdivision (1) of section 2 of said former act so as to make the same read as follows: "(1) When the transfer is by will or by the intestate or homestead laws of this state, from any person dying seized or possessed of the property while a resident of the state, or by any order of court setting apart property pursuant to article one, chapter five, title eleven, part three of the Code of Civil Procedure." It also, in reframing said law, omitted therefrom the provision which had been a part of section 4 of the former act relating to family allowances and to their inclusion in determining the market value of the estate to be burdened by the tax. It is argued by the respondent herein that such omission was not due to any intent on the part of the lawmakers to relieve those persons who had received family allowances from the burden of inheritance taxes, but that it was due to the change in the wording of subdivision (1) of section 2 of said act bringing family allowances within its terms. But if, as above stated, we conclude that the provision in section 4 of the act of 1913 did not lay the burden of inheritance taxes upon the recipients of family allowances, at least directly, the above argument would lose its potency and the respondent would thus be driven to take and maintain the position that the changed language of subdivision (1) of section 2 of the statute of 1917 must in and of itself be interpreted as evincing an intent in the lawmakers to impose upon family allowances an inheritance tax which had not theretofore been imposed by any previous statute. Looking, therefore, to the language of said subdivision and applying to its terms the principle of strict construction above held to be applicable generally to inheritance tax laws, we find that in addition to the inclusion of transfers by will, or by the intestate or homestead laws of this state within the scope of such taxes the subdivision also purports to include therein such property of the decedent as has been transferred "by any order of court *setting apart* property pursuant to article three, chapter five, title eleven, part three of the Code

of Civil Procedure." Comparing this subdivision with sub-
division (1) of section 1 of the act of 1911, we discover that
by the use of the term "homestead laws" in the opening
clause in each subdivision the legislature intended to refer
to homesteads created under statutory homestead laws as
distinguished from so-called "probate homesteads"; since the
latter are separately specified in the succeeding clause in sub-
division (1) of the previous statute; and since in subdivision
(1) of the later statute the first clause of the former act
is copied *in haec verba*, but the succeeding clause thereof
relating to "probate homesteads" is omitted, we thus have
the situation that but for the inclusion of the latter portion
of subdivision (1), above quoted, in the act of 1917 "pro-
bate homesteads" would not have been subjected to an in-
heritance tax. It is also to be borne in mind that prior to
the adoption of the act of 1915 property of an estate exempt
from execution and set apart as such for the use of the sur-
viving husband or wife, or in the event of the death of each
such survivor to the use of the minor children of the de-
cedent, under the provisions of section 1465 of the Code of
Civil Procedure, had never been subjected to the burden of
inheritance taxes. (*Estate of Kennedy, supra.*)

The purpose of the lawmakers in reframing subdivision
(1) of section 2 of the previous inheritance tax law was to
embrace within its terms "probate homesteads" which had
theretofore been subjected to the tax by the express terms
of the previous act, and to further extend its provisions so
as to include "exempt property" which had not theretofore
been made subject to the tax. This is made clear by the use
of the term "set apart" in said subdivision and by its
reference to the title, chapter, and article of the Code of
Civil Procedure in which this term is used in relation to
orders of the probate court dealing with the creation of pro-
bate homesteads and with the sequestration of those portions
of the decedent's property which was by other statutes ex-
empt from execution. When we turn to the said title, chap-
ter, and article of the code thus referred to we find that it
embraces sections 1464 to 1470; inclusive, of said code and
that these sections deal generally with the subject of provi-
sion for the support of the decedent's family; and that
among these is section 1466, by the terms of which the pro-
bate court is empowered under certain conditions "to make

such reasonable allowance out of the estate as shall be necessary for the maintenance of the family according to their circumstances during the progress of the settlement of the estate.'' Certain other sections of said article refer to probate homesteads and to exempt property; and as to each of these the orders of the court sequestrating these forms of the estate's properties are expressly designated as orders ''setting apart'' such properties for the use of the surviving member or members of the decedent's family. In other portions of the same code these orders when referred to are designated as orders ''setting apart'' such homestead or exempt properties. (Code Civ. Proc., secs. 963, 1486, 1719.) It would thus appear that the phrase ''setting apart'' has been given a particular meaning as applicable to orders affecting those forms of property to which it is applied in the foregoing sections of the Code of Civil Procedure, and that this being so the lawmakers made use of this expression in subdivision (1) of section 2 of the inheritance tax law of 1917 as having reference to the particular kinds of property to which it had been applied in the article, chapter, and title referred to in said subdivision. **[2]** There is much reason for holding that its said use in said subdivision should not be extended to family allowances. The provision for the family of the decedent is one which arises out of the necessities of the situation. By the very terms of the section of the code which permits the court to make such allowance it is only to be made ''if the property *set apart*,'' that is to say the homestead and exempt property, ''is insufficient for the support of the widow and children or either.'' It is in the nature of a continuance of that contribution to the daily or regular maintenance of the household and its occupants which the decedent himself was accustomed to provide and would have continued to supply but for his death, and which, if so supplied, would to that extent have diminished the substance of his assets subject to this form of taxation. When allowed by the court in such reasonable amount and under such circumstances as are prescribed by the statute it would in the nature of things be disbursed and dissipated in providing for the family necessities pending the settlement of the estate. There is every reason, therefore, why this perishable part of decedent's estate ought not to be diminished by the imposition of an inheritance tax in the absence of a

clear intent on the part of the legislature to so prescribe. We discover no such clear intent either in the past history of inheritance tax legislation in this state or in the terms of the existing statute, and hence find no difficulty in the way of holding that in so far as the inheritance tax appraiser undertook to impose such tax upon the family allowance made to the widow and minor daughter of said deceased, and in so far as the trial court undertook by its order to approve the action of the inheritance tax appraiser in that regard, each of these was in error and that such order should be reversed.

The second contention of the appellants herein is that the inheritance tax appraiser was also in error in computing the amounts taxable to the widow and daughter of the decedent in each case by the plan of deducting the exemption of $24,000 allowed by the inheritance tax law of 1921 from the first $25,000, taxable at one per cent under the terms of the said law, instead of deducting each of said exemptions of $24,000 from each of the *aggregate* amounts of property transferred respectively and taxing each remainder after making such deductions at the rates at which it would have been taxed had no exemptions been allowed; and that the trial court was also in error in approving the report of the inheritance tax appraiser based upon such erroneous plan of computation. The appellants use the term "aggregate" as referring to the last $25,000 of the transferred estate. It is claimed that the difference to each of the appellants resulting from this alleged improper method of calculation would amount approximately to $800. **[3]** It may be here stated that since we are now dealing with the exemptions provided for in the inheritance tax law the provisions of said law applicable to this phase of the present appeal should under the principles heretofore announced, be construed liberally in favor of the state and strictly as to those claiming the benefit of such exemptions. (See Dos Passos on Inheritance Tax Law, and cases cited, *supra*.) In determining the state of the present law as applicable to the question here presented we are again required to have access to the earlier statutes upon the subject and to the decisions of this court interpreting the same. The inheritance tax law enacted in 1905 (Stats. 1905, p. 341), after declaring in section 1 thereof that all property passing by will, etc., shall be subject to

such tax, provides that ''the tax so imposed shall be upon
the market value of such property at the rates hereinafter
prescribed and only upon the excess over the exemptions
hereinafter granted.'' Section 2 fixes certain rates, varying
according to the degree of kinship between the decedent and
the successor, ''when the property . . . exceeds in value the
exemption hereinafter specified and shall not exceed in value
twenty-five thousand dollars.'' Section 3 declares that the
''rates in section 2 are for convenience termed the primary
rates,'' and fixes an increasing scale of rates, consisting of
multiples of the primary rates, for the property in excess
of $25,000. Section 4 allows exemptions of different amounts
to various classes of persons and corporations. In the mat-
ter of the *Estate of Timken*, 158 Cal. 51 [109 Pac. 608], this
court was called upon to interpret the foregoing provisions
of the act of 1905 in a case wherein the appellant (in that
matter  the state) contended that the exemptions provided
for in section 4 of said act should be deducted from the
amount to which the primary rates were to be applied under
the language of section 2 thereof. This court upheld this
contention, holding that the entire amount of the property
transferred, whether exempt or not, was to be considered
for the purpose of fixing the rate of taxation, and that it
followed necessarily that where the property including the
exemption exceeds $25,000 the excess is taxable at the in-
creased rates provided for in section 3 of said act; and that
the only way in which this could be accomplished was by
deducting the exemption from the first $25,000 rather than
from the entire value of the property transferred, and that
such interpretation involved no inconsistency between section
1 and the succeeding sections of said act. In so deciding
this court followed the rule of computation which had been
already approved in the case of *Estate of Bull*, 153 Cal. 715
[96 Pac. 366], although in that case the direct point involved
in the Timken case was not under review. The act of 1905
underwent a number of amendments and revisions both
after its passage in that year and after its interpretation by
this court in the foregoing cases, and it is to be noted that
during these several amendments to and revisions of said
act down even to the year 1921 the foregoing provisions
thereof remained practically unchanged, except in a particu-
lar hereafter to be noted, the several succeeding legislatures

being apparently satisfied with the terms of the foregoing
provisions of the original act and with the interpretation
which this court had placed upon the same in the above-cited
cases. The act of 1921 (Stats. 1921, p. 1500) corresponds
as to sections 2, 4, and 5 thereof in practically identical
language with sections 1, 2, and 3 of the act of 1905, and it
would seem to follow that but for a certain other provision
in the act of 1921 which, as claimed by the appellants herein,
evinces a different intent, the same interpretation must be
given to sections 2, 4, and 5 of the act of 1921 which this
court gave to the similar provisions of the act of 1905 in the
cases already referred to. Such was in fact the interpreta-
tion given to said sections and in fact to the entire act of
1921 by the respondent in computing the inheritance taxes
involved in this branch of this appeal.

The appellants herein, however, contend that an entirely
different intent has been expressed by the legislature in its
revision of the inheritance tax laws through the incorpora-
tion in the act of 1921 of subdivision (6) of section 6 of said
act reading as follows: "(6) In computing the tax upon
transfers subject to tax under the provisions of this act, the
exemptions in this section allowed shall be deducted from the
aggregate amount of property transferred, and the transfer
of the remainder of the property after making such deduc-
tion shall be taxed at the rates at which it would have been
taxed had no exemption whatever been allowed." It is the
contention of the appellants herein that the insertion of this
provision in the act of 1921 evinces a clear intention on the
part of the legislature to abandon the rule for the computa-
tion of inheritance taxes declared by this court in *Estate of
Timken, supra.* To adopt this view would be to confess that
the earlier provisions in the said act of 1921, and which were
retained in it in practically identical form in which were
phrased the like provisions in the act of 1905, and which
were interpreted to mean what that case said they did mean,
are irreconcilable with the said amendment as the appellants
interpret it, and to so conclude would be to refuse to give
any further force and effect to said earlier provisions in
said statute in so far as they relate to the method of com-
putation of such taxes upon the theory that when two pro-
visions in a statute are found to be irreconcilable the one
last adopted is to be given effect as the latest expression

of the legislative intent. [4] That such is the rule applicable to such a situation may not be gainsaid (*Alameda County* v. *Dalton*, 148 Cal. 246 [82 Pac. 1050], and cases cited), but it is a rule of necessity and ought not to be given application unless and until it shall be made to clearly appear that such irreconcilable conflict between the earlier and the later provisions of the law exists. Looking to the terms of subdivision (6) of section 6 of the statute of 1921 we are not satisfied that the interpretation which the appellants insist in placing upon it is the only one which its language, when read as a whole, will bear. It is argued by the appellants that the first half of said provision declaring that "The exemptions in this section allowed shall be deducted *from the aggregate* amount of property transferred," was intended to provide a different method of computation than that laid down in *Estate of Timken*, wherein it is stated that the only way to accomplish the result intended by the sections 2 and 3 of the act of 1905 was by deducting the exemption from the first $25,000 rather than from the entire estate transferred. [5] It is to be clearly kept in mind, however, that exemptions in any event are but deductions from the whole of the estate transferred and are important as affecting the inheritance tax to be computed only when the bases of computation of such tax upon the remainder of such property are to be affected by such deduction. The remainder of the property to be affected by the deduction of the stated exemptions could only be differently affected by taking the exempted amount from the first $25,000, as contrasted with taking it from the last $25,000 of the estate transferred, because the inheritance tax is a progressive tax; or, as it is sometimes termed, a "step tax" which increases progressively with the size of the estate transferred. To illustrate: Taking the rule of computation laid down in *Estate of Timken*, *supra*, as exemplified in the computation given in that decision and applying it to the instant case, we would have the following result in so far as it affects the widow of decedent, one of these appellants herein: Total amount of estate transferred, $102,699; exempt under section 6 of said act, $24,000; remainder of estate subject to tax, $78,699; balance of first $25,000 subject to tax ($1,000) of one per cent under section 4 of said act, tax $10; balance under $50,000 subject to tax of two per cent ($25,000) under section 5 of said act, tax

$500; balance above $50,000 subject to tax of four per cent
($50,000) under section 5 of said act, tax $2,000; balance of
remaining estate subject to tax of seven per cent ($3,699)
under section 5 of said act, tax $188.94: Total tax $2,698.94.
Such would doubtless be the computation if the rule in the
Timken case remained unchanged. Under the appellants'
contention that the rule in the Timken Estate has been
changed by the provision in the first clause of subdivision
(6) of section 6 above quoted so as to require the exemptions
to be deducted from the last instead of the first $25,000 in
value of said estate, the result would be that of reducing the
tax upon the widow's share to $1,897.67. It is to be noted,
however, that the language of the first clause in said sub-
division (6) of section 6 of said act above quoted does not
expressly require that the exemptions allowed under said
section, while required to be taken from the "aggregate" of
the estate transferred, shall be taken out of either the first or
the middle or the last of the several classes of said estate to
be progressively taxed. In any event, whether taken out of
the first or the middle or the last of said classifications, the
exemptions to the extent thereof diminish the taxable amount
of the estate transferred and are therefore taken out of the
aggregate of said estate. If the legislature had intended by
this particular clause in subdivision (6) of section 6 of said
act to effectuate a change in the amount of the tax to be
placed upon the unexempted portion of said estate after al-
lowing such exemptions, it would have said so in the latter
clause of said subdivision. But when we read the latter
clause of said subdivision it would seem to express an exactly
contrary intention. Said latter clause in said subdivision
reads as follows: "and the transfer of the remainder of the
property after making such deduction shall be taxed at
the rates at which it would have been taxed had no exemp-
tion whatever been allowed." This portion of said sub-
division is clearly susceptible of the interpretation that the
exemptions provided for in the earlier portions of said sec-
tion may be deducted from the first part of the property
transferred which is to be subjected to said exemptions, and
afterward the remainder of the property is to be subjected
to such tax. The foregoing interpretation of subdivision (6)
of section 6 of said act, either when read separately or to-
gether, harmonizes with sections 2, 4, and 5 of the act of

1921, which, as we have seen, were substantially, and in the main verbally, re-enactments of sections 1, 2, and 3 of the act of 1905.

The appellants contend, however, that in making such re-enactments of the sections of said earlier statute the legislature has omitted from section 3 thereof as it read prior to such re-enactment the provision that the "rates in section 2 are for convenience termed the primary rates," and that this court in *Estate of Timken, supra,* emphasized the phrase "the primary rates" in giving to said sections of said earlier act the interpretation which it is claimed by the respondent their counterpart in the latter statute should bear. It appears, however, that the foregoing sentence in section 3 of the act of 1905 and which was retained in the revision of said act in 1913 (Stats. 1913, p. 1066), referring to "primary rates," was eliminated therefrom in the amendments of the statute of 1913 by the act of 1915 (Stats. 1915, p. 419). Notwithstanding this elimination of said phrase in the latter year this court in the case of *Estate of Potter,* 188 Cal. 64 [204 Pac. 826], gave to the act of 1915 the same interpretation as that given by it to the act of 1905 in *Estate of Timken.* It would seem, therefore, that the omission of the phrase "the primary rates" made in 1915 could have no significance in determining the meaning of the phrase "the aggregate amount of property transferred" as found in the first clause of subdivision (6) of section 6 of the statute of 1921. We must therefore look elsewhere for the meaning to be given to the latter phrase in order to determine whether it was the intent of the legislature by its use to change the rule laid down in *Estate of Timken.* Subdivision (6) of section 6 of the act of 1921 was adopted and made a part of section 6 of said act at the same time that another important change was made in the matter of exemptions as allowed in former acts. That change is to be found in clause (b) of subdivision 2 of said section 6, which provides for the exemption of "All property transferred by a decedent to any person described in the first subdivision of section four, providing the same was transferred to such decedent not more than five years prior to his death by another decedent of the class described in the first subdivision of section four, and a tax paid thereon." By reading the clause just quoted in connection with clause (a) which immediately precedes it, and also in

195 Cal.—26

connection with subdivision (1) of section 4 of the same act to which it refers, it will be seen that the persons described in clause (a) of said section 6 and who are also embraced in the enumeration of relatives of the decedent given in subdivision (1). of section 4 of said act are or may become the beneficiaries to two different kinds of exemptions under the terms of section 6 of the act of 1921. This condition having for the first time been recognized and dealt with in our inheritance tax laws, it became necessary to define the method of making these two sorts of exemptions in estates wherein the facts justified their application and of computing the inheritance tax upon the remainder of such estates after such exemptions had been made. Hence the addition of subdivision (6) to said section 6 so as to provide that in those estates where these two sorts of exemptions might occur the *aggregate* of the estate transferred was in each case to be taken in making the deductions due to these and each of these exemptions, and that as to the remainder of the estate, it should be taxed at the rates at which it would have been taxed had no exemptions been allowed. When the entire content of section 6 of said act is thus considered the scope and purpose of subdivision (6) thereof would seem to be entirely plain, and thus interpreted it is again found to be in entire harmony with the earlier provisions of said act and with the interpretation thereof as given by this court in *Estate of Timken, supra.*

[6] It may further be suggested that where two interpretations of the provisions of a statute imposing taxes are urged, that one should, if possible, be adopted which lays the burden of taxation uniformly upon those who bear that burden and who stand in the same degree with relation to the tax, and a like rule would apply to those who stand in the same degree with regard to their statutory right, if any, to exemption from the burden of the tax. For example, widows of decedents are entitled to those exemptions from inheritance taxes to the extent provided in section 6 of the act of 1921, and this being so the act should be so interpreted that all widows should be equally affected by the making of the deductions from the estates transferred arising from these exemptions. If the exemption is in every case to be deducted from the first $25,000 of every estate, then the benefit to each widow would in every case be the same; that

is to say, she would save the tax of one per cent upon the amount of her said exemption. But if the rule insisted upon by the appellants herein were to be followed this equality of benefit would be destroyed, since the wealthier the widow by virtue of the estate transferred the greater would be the percentage of her saving in the amount of her tax. For example, the widow whose transferred share in the estate of her deceased husband was $124,000 would, by the application of her exemption of $24,000 to the last $24,000 of her said transferred estate, save seven per cent in her inheritance tax, while a widow whose whole transferred estate was $24,000 would only save a tax of one per cent in her inheritance tax upon the amount of her exemption.

[7] For the foregoing reasons we are of the opinion that the inheritance tax appraiser was correct in the application of the rule declared in the *Estate of Timken, supra,* to the method of appraising and computing inheritance taxes under section 6 of the act of 1921, and hence we conclude that the portion of the order of the probate court in approving that portion of her said appraisement was and is correct.

The order of this court will therefore be that the order of the trial court in so far as it undertook to impose an inheritance tax upon the family allowance allowed the appellants is reversed; and that the portion of its said order approving the report of the inheritance tax appraisers as to the amount of inheritance tax to be imposed upon the estate transferred to said appellants and each of them, after the deduction of the exemptions to which said appellants and each of them are entitled, is affirmed. The trial court is directed to make and enter such order or orders in the matter of such inheritance taxes as shall conform to this opinion.

Lawlor, J., Shenk, J., Waste, J., Myers, C. J., Seawell, J., and Lennon, J., concurred.

Rehearing denied.

All the Justices concurred.