[Civ. No. 15110.   First Div., Div. One.   May 5, 1952.]

Estate of RICHARD C. HARRISON, Deceased.   ROBERT W. HARRISON, Appellant, v. THOMAS H. KUCHEL, as State Controller, Respondent.

Robert W. Harrison, in pro. per., for Appellant.

James W. Hickey, Charles J. Barry and Newell C. Barnett for Respondent.

BRAY, J.—Appeal on an agreed statement from orders overruling appellant's objection to an amended report of the Inheritance Tax Appraiser and fixing inheritance tax.

## QUESTION PRESENTED

Under our Inheritance Tax Law, shall the statutory exemption be deducted from the total clear market value of the property transferred, and the tax then computed on the remainder of such value, or shall the exemption be deducted from the *first* $25,000 of the clear market value and the tax then computed on the remainder?

## RECORD

Appellant is the brother and sole heir of decedent. The inheritance tax appraiser filed in the estate his report determining the clear market value of the property transferable to appellant to be $60,558.26. No criticism is made of this value. Following is a computation of the tax as made by the appraiser and the one which appellant claims should have been made:

| Appraiser's method: | | Appellant's method: | |
|---|---|---|---|
| $2,000 .............. | exempt | $25,000 at 5%........ | $1,250.00 |
| $23,000 at 5%........ | $1,150.00 | $25,000 at 7%........ | $1,750.00 |
| $25,000 at 7%........ | $1,750.00 | $8,558.26 at 10%...... | $ 855.83 |
| $10,558.26 at 10%..... | $1,055.83 | $2,000 .............. | exempt |
| $60,558.26 ........... | $3,955.83 | $60,558.26 ........... | $3,855.83 |

After a hearing the court overruled appellant's objections to the report and entered its order fixing the tax at $3,955.83, or $100 more than appellant claims it should be.

## THE LAW

The basic sections of the Revenue and Taxation Code involved follow: Section 13402. "The tax is computed upon the clear market value of the property transferred, but only upon that portion in excess of the exemptions allowable on the date of the transferor's death, and at the rates which are then in effect." Section 13403. "In computing the tax, the exemptions allowed by Articles 1 and 2 of Chapter 5[1] of this part are deducted from the clear market value of the property transferred, and the tax is computed on the remainder of the property at the same rates that would have been applicable *had the exemptions not been allowed.*" (Italics added.) Section 13405 provides: "In the case of a transfer to a Class B transferee the rates of tax are as follows: (a) 5 per cent of the clear market value of the property transferred up to $25,000. (b) 7 per cent of the excess value over $25,000

---

[1]These provide an exemption for a brother of $2,000.

and up to $50,000. (c) 10 per cent of the excess value over $50,000 and up to $100,000. . . .''

Appellant contends that section 13403 requires that the deduction should be made from the total value and the tax computed on the remainder, while respondent contends and the court found that it must be made from the clear market value mentioned in the first or (a) bracket of rates set forth in section 13405. We agree with that contention, for otherwise there is no meaning to the language in section 13403 ''at the same rates that would have been applicable *had the exemptions not been allowed.''* (Italics added.) If the exemption is to be deducted from the overall value and the tax paid on the balance, the section would have ended with the words ''and the tax is computed on the remainder of the property.'' There would be no reason for adding the words which follow. To make it more clear, assume a net value of property to be transferred to be $30,000. Applying section 13405 without the last clause, the tax would be computed thus:

$25,000 at 5%..........................$1,250
$ 3,000 at 7%..........................$ 210
$ 2,000 ...............................exempt

$30,000 ...............................$1,460

But to get at the *rate* applicable had the exemption not been allowed it would be:

$ 2,000 at 5% rate
$23,000 at 5% rate
$ 5,000 at 7% rate

While we must disregard the exemption to get at the *rate,* we, of course, in determining the tax, must allow the exemption. So it works out as follows:

$ 2,000 ...............................exempt
$23,000 at 5%..........................$1,150
$ 5,000 at 7%..........................$ 350

$30,000 ...............................$1,500

This method was the one approved in *Estate of Steehler,* 195 Cal. 386 [233 P. 972], where the court was considering subdivision 6 of section 6 of the Inheritance Tax Act of 1921, which read in substance the same as section 13403. Appellant contends, however, that the decision in that case and the construction therein placed on subdivision 6 was predicated on a provision of section 4 of the 1921 act, which provision

was omitted when the present Inheritance Tax Law was codified in 1943. In the Steehler case the court pointed out that while statutes imposing inheritance taxes are to be strictly construed in favor of the individual and against the state, when dealing with the exemptions provided in such statutes, the provisions applicable to exemptions, on the contrary, are to be construed liberally in favor of the state and against those claiming the benefit of such exemptions. It then referred to *Estate of Timken,* 158 Cal. 51 [109 P. 608], where the court held under the provisions of the Inheritance Tax Act of 1905 that the exemption was deducted from the first $25,000 of property value rather than from the entire value of the property transferred. It stated that there the court was following the rule of computation approved in *Estate of Bull,* 153 Cal. 715 [96 P. 366]. It then stated that since that date and particularly since these decisions the 1905 act had undergone a number of amendments and revisions, but that except in one particular the several succeeding Legislatures to and including 1921 seemed satisfied with the provisions of the 1905 act considered in those cases and with the court's interpretation thereof. The particular in which the 1905 act was changed was the adoption in the act of 1921 of subdivision 6 of section 6 which reads identically with section 13403 and which for the first time added the words "had the exemptions not been allowed." In the Steehler case it was contended that these words coupled with the words in the first part of the section "the exemptions . . . shall be deducted from the *aggregate* amount of property transferred" (italics added) evinced an intention of the Legislature to do away with the rule for computation of inheritance taxes set forth in *Estate of Timken, supra.* The court, however, held that there was nothing in this subdivision that conflicted with the earlier provisions of the act nor any intention of the Legislature to change the interpretation theretofore given by the courts.

Appellant contends that the Steehler case is distinguishable because section 4 which was in existence at the time of that case is not included in the present act, and he contends that the Steehler decision was predicated upon the provisions of that section. This, however, is a misconstruction of that decision, for there the court said that its interpretation of subdivision 6 of section 6 "either when read *separately or together*, harmonizes with sections 2, 4 and 5 of the act . . ." (P. 400; italics added.) Section 4 of the 1921 act fixed the tax rate on property transferred which exceeded in value the

exemption but not $25,000. A separate section (section 5) fixed the tax rate when the value exceeded $25,000. A reading of the Steehler decision shows that the court was principally concerned with the interpretation of subdivision 6 and that its references to section 4 in nowise constituted a basis of the decision. Section 4 was continued in the Inheritance Tax Act of 1935 but in the codification of the Inheritance Tax Act into the Revenue and Taxation Code by the Statutes of 1943, its language is not included. Transferees are divided into classes A, B, C and D for tax rate purposes. Instead of stating in each class, as was the effect of section 4, that the primary rate[2] is based on the value of the property between the amount of the exemption and $25,000 and then a secondary rate on the next $25,000, it now gives in each class a primary rate on the first $25,000 and in none of the classes does it mention the exemption. Appellant contends that this indicates an intention of the Legislature to no longer require that the exemption be taken from the first bracket, but from the aggregate. Such a contention overlooks the language of section 13403 heretofore discussed, "the same rates that would have been applicable had the exemptions not been allowed."

To adopt appellant's contention would be to require us to find that the mere regrouping of the various classes of taxpayers and the rates to be paid by them and the failure to mention in the provision of their primary rates the fact that the exemption is to be there deducted, indicates a desire of the Legislature to make the new grouping irreconcilable with the language in section 13403 and with the interpretation of the Inheritance Tax Act heretofore approved by the Legislature. As said in *Estate of Steehler, supra,* 195 Cal. 386, at page 399, such an interpretation "ought not to be given application unless and until it shall be made to clearly appear that such irreconcilable conflict between the earlier and the later provisions of the law exists." We can find no such intention, particularly in view of the provisions of section 2 of the Revenue and Taxation Code. The language of the Steehler case (p. 400) referring to the adoption by the Legislature of subdivision 6 of section 6 of the 1921 act (identical with the language of section 13403) is particularly applicable to the situation today:[3] ". . . the language of the

[2] For brevity we refer to the rates provided for the first bracket as "primary rates" without intending any legal signficance in the term.

[3] We have paraphrased the language by substituting section 13403 for subdivision 6 of section 6 where the latter appears.

first clause in . . . [section 13403] does not expressly require that the exemptions allowed under said section, while required to be taken from the 'aggregate' of the estate transferred, shall be taken out of either the first or the middle or the last of the several classes of said estate to be progressively taxed. In any event, whether taken out of the first or the middle or the last of said classifications, the exemptions to the extent thereof diminish the taxable amount of the estate transferred and are therefore taken out of the aggregate of said estate. If the legislature had intended by the particular clause in . . . [section 13403] to effectuate a change in the amount of the tax to be placed upon the unexempted portion of said estate after allowing such exemptions, it would have said so in the latter clause of said . . . [section]. But when we read the latter clause of said . . . [section] it would seem to express an exactly contrary intention."

*Estate of Letchworth,* 201 Cal. 1 [255 P. 195], and *Estate of Childs,* 18 Cal.2d 237 [115 P.2d 432, 136 A.L.R. 333], seem to give both parties comfort. However, in neither case was the court considering the question involved here, and they therefore are not in point. .

The conclusion reached by us is in conformity with the interpretation that the state controller has consistently placed upon the Inheritance Tax Act and the changes thereto. ■ "The construction of a statute by the officials charged with its administration must be given great weight, for their 'substantially contemporaneous expressions of opinion are highly relevant and material evidence of the probable general understanding of the times and of the opinions of men who probably were active in the drafting of the statute.' " (*Whitcomb Hotel, Inc.* v. *California Emp. Com.,* 24 Cal.2d 753, 756-757 [151 P.2d 233, 155 A.L.R. 405].)

. The orders are affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied June 4, 1952, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1952. Shenk, J., was of the opinion that the petition should be granted.