[L. A. No. 5608. In Bank.—May 12, 1920.]

In the Matter of the Estate of ALBERT M. MURPHY, Deceased.

[1] INHERITANCE TAX — TRANSFER OF REMAINDER SUBJECT TO LIFE ESTATE—RESERVED POWER OF APPOINTMENT BY WILL.—Where the beneficiary of a trust pursuant to an agreement between all the beneficiaries· conveyed all his interest in the trust upon certain other trusts and in the conveyance reserved a life estate in the income and transferred the remainder to his wife and children' subject to his right to dispose of such interest by power of appointment to be exercised in his will, the remainders thus created were vested, although defeasible, and subject to the payment of an inheritance tax under the law of 1911 (Stats. 1911, p. 712), upon his death leaving a will specially providing that the' terms of the trust agreement be carried out, although the will also contained a general devise, since such devise, in view of the existence of other estate than that covered by the trust conveyance, is not to be construed as an exercise of the power of appointment.

[2] ID.—LAW CONTROLLING TAX.—It ·is the vesting in interest which constitutes the succession, and the question of liability to such a tax must be determined by the law in force at that time.

[3] ID. — TRANSFER OF INTEREST IN TRUST PROPERTY — WANT OF ADEQUATE AND VALUABLE CONSIDERATION.—Where the beneficiary

3. Liability of transfer made before death to succession tax, notes, 14 Ann. Cas. 109; Ann. Cas. 1915B, 1089.

Consideration as affecting liability to a succession or inheritance tax, note, 7 A. L. R. 1046.

of trust property which was to go to the beneficiary's children in the event of his death during the life of the trust, transferred the property upon certain other trusts reserving a life estate in the income, with remainder to his wife and children subject to the right to otherwise dispose of the property by power of appointment to be exercised in his will, there was no adequate and valuable consideration for the transfer which would avoid the payment of the inheritance tax.

[4] ID.—TRANSFER OF PROPERTY BY NONRESIDENT—LIABILITY TO TAX. —A transfer of property by a nonresident is not subject to tax unless the property is within the state.

APPEAL from an order of the Superior Court of · Los Angeles County fixing amount of inheritance tax. James C. Rives, Judge. Reversed.

⟩ The facts are stated in the opinion of the court.

Robert A. Waring, John W. Carrigan and Edwin H. Pennock for Appellant.

O'Melveny, Millikin & Tuller and A. Lincoln Rowland for Respondents.

THE COURT.—The following opinion was prepared by Mr. Justice Kerrigan of the district court of appeal of the first appellate district while acting as justice *pro tempore* in this court in place of Mr. Justice Melvin. It is adopted as the opinion of this court:

This appeal involves the question of the amount due as inheritance tax in the above-entitled matter.

Deceased died testate October 19, 1915, a resident of Los Angeles County, and his personal estate was appraised at over a million dollars, and an inheritance tax amounting to the sum of $24,462.67 was paid thereon. No attack is made upon the order impressing this property with a tax or upon the sum found to be due. The value of that estate was exclusive of an· interest which the deceased owned in what is known as the Murphy Family Trusts, and the question presented by this appeal is whether or not that interest is subject to the payment of a transfer tax. Deceased acquired this interest from the estate of his father, Simon Murphy, who died February 1, 1905, leaving a will by the terms of which the bulk of his estate was given to his children and

other descendants, impressed, however, with certain trusts. The prescribed term of these various trusts was for the period of ten years, i. e., until February 1, 1915, or upon the earlier decease of the survivor of the two sons named therein. The trustees were directed upon the termination of these trusts to divide the estate into five equal shares among certain of his children, of whom Albert, the deceased, was one. The interest which the deceased took in his father's estate was to go to his issue in the event that he predeceased them during the life of the trust, and upon failure of issue this interest was to be divided among his brothers and sisters. On December 17, 1912, at which time decedent was not a resident of California, the various members of the Murphy family voluntarily agreed to extend the term of the trust created by their ancestor for a period of some twenty years from its termination. In pursuance of this plan all the persons having any interests, including the deceased and his ten children, joined in conveying all such interests upon trusts, which were described and declared as the Murphy Family Trusts. Deceased, in conveying his interest upon these trusts, retained a life estate in the income, with a power of appointment by will over the remainder if he died after February 1, 1915. He further provided that in the event of his death prior to February 1, 1915, this interest should go in equal shares to his ten children, and that if he died after February 1, 1915, without exercising the reserved' power of appointment, then and in that event his wife, if surviving, should share with the ten children equally.

The Murphy Family Trusts conveyance is voluminous, and a full review of its recitals and provisions would extend this opinion to an undue length and answer no useful purpose. Respondents claim that the conveyance by the ten children constitutes a valuable and adequate consideration and one sufficient to prevent the succession tax· from attaching.

By his will made on February 16, 1915, which was within eight months of his death, decedent disposed of his entire estate, but respecting the agreement of December 17, 1912, which the respondents properly call a trust conveyance, he made the following special provision:

"It is my will and I hereby direct that the terms, condition and purpose of the trust agreement entered into by me

with other heirs and devisees of my late father Simon J. Murphy, on the 17th day of December, 1912, and known as the Murphy Family Trust, as far as the same shall not be inconsistent with the provisions of this my will or render nugatory any of the provisions thereof, shall be carried out.''

The trust of 1905 expired on February 1, 1915, and if the deceased had not made the trust conveyance of 1912 he would have been the owner at the time of his death of his original share in the properties of the trust of 1905. On December 17, 1912, however, he conveyed his share of the trust of 1905 upon trusts whereby he reserved a life estate, transferred the remainders to his widow and his ten children, subject, however, to his power to dispose of this property by power of appointment to be exercised in his will. We have already quoted the provision in his will dealing with the matter and, therefore, have before us the facts upon which the decision must turn.

1. Is the transfer of December 17, 1912, in its nature a taxable transfer?

2. If so, was there an adequate and valuable consideration therefor which would avoid the tax?

3. As Albert Murphy was a nonresident of California on December 17, 1912, is the transfer taxable only in so far as it was limited to California assets?

We take these questions up in the order stated.

Albert Murphy was alive on February 2, 1915. On that day, therefore, he would have been the absolute and indefeasible owner of his share of his father's estate if he had not made the transfer of December 17, 1912. In that transfer he reserved the income of the property for his life and transferred the estate in remainder to his wife and children subject to his right to dispose of the property by power of appointment to be exercised in his will. The remainders thus created were vested although defeasible (Civ. Code, secs. 694, 781; *Estate of Dunphy*, 147 Cal. 95, [81 Pac. 315]; *Gray* v. *Union Trust Co.*, 171 Cal. 637, [154 Pac. 306]). Ordinarily, the transfer of a remainder subject to a life estate reserved by the grantor is a taxable transfer (*Estate of Felton*, 176 Cal. 663, [169 Pac. 393]), and, therefore, the transfer of December 17, 1912, is taxable under the law

of 1911, section 1, subdivision 3 (Stats. 1911, p. 713), which provides:

"When the transfer is of property made by a resident, or by a nonresident when such nonresident's property is within this state, by deed, grant, bargain, sale, assignment or gift, made without valuable and adequate consideration in contemplation of the death of the grantor, vendor, assignor or donor, or intended to take effect in possession or enjoyment at or after such death . . . " unless the reserved power of appointment changes the case.

The remaindermen, consisting of the widow and children, who are respondents on this appeal, argue that the reserved power of appointment contained in the transfer of December 17, 1912, and the provisions of the will of Albert M. Murphy which became effective at his death October 19, 1915, do change the case. The respondents argue that they do not take the property as remaindermen under the transfer of December 17, 1912, but claim that their title comes from a power of appointment exercised under the will. They also claim that the exercise of a power of appointment was not taxable when Albert M. Murphy died in 1915, and, hence, they take the property free from any transfer or inheritance tax. It appears that the exercise of powers of appointment was taxable from 1905 to 1913, and has been from 1917 to the present time, but was not taxable from 1913 to 1917.

Respondents contend that decedent's will contains a general devise, and that this amounted to an exercise of the power of appointment reserved in the trust conveyance of December 17, 1912 (sec. 1330, Civ. Code), and argue that by the power of appointment thus exercised the shares in the property covered by the trust conveyance of December 17, 1912, were distributed differently than in said trust conveyance.

[1] We think not. The property conveyed December 17, 1912, is controlled by the special clause of the will, which we have already quoted, and not by the general devise. As already stated, the decedent owned at his death property worth one million dollars exclusive of the property covered by the trust conveyance of December 17, 1912. We think the true interpretation of his will is that the dispositions therein made deal with the one million dollars, and that item 3 of the will confirming the trust conveyance of December

17, 1912, was intended to approve of all of the dispositions therein provided for. The language employed in terms confirmed the trust deed. It is not necessary for us finally to determine whether this confirmatory clause amounted to the exercise of the power of appointment or is to be treated as a failure to exercise the power. In either event the result is the same. If it is to be treated as the exercise of the power of appointment it is controlled by the views expressed in *Matter of Lansing,* cited below; and if it is to be treated as a failure to exercise the power of appointment then the vested defeasible remainders created December 17, 1912, became indefeasible by the decedent's failure to exercise the power of appointment.

*Matter of Lansing,* 182 N. Y. 238, [73 N. E. 882], involved property in which a mother had a life estate with remainder to her daughter, subject to the right of the mother to dispose of the property by the exercise of a power of appointment in her will. At her death the mother left a will in which she exercised the power of appointment by devising the property to her daughter. The court said that "the execution of the power left the title where it was before, and the result is the same as if there had been no power to exercise."

Speaking of the effect of the exercise of the power upon the title which the daughter had during the mother's life, the court said: "While the situation was subject to change under the power of appointment, no change was made. Although the power was exercised in form, her title was perfect without it, and she derived no benefit from it. The power was to 'dispose of the remainder,' and the remainder was not disposed of but continued where it was. The attempt to execute the power was not effective because it did nothing. The exercise of a power which leaves everything as it was before is a mere form with no substance."

*Matter of Lansing* has been approved and followed in similar cases. (*Matter of Haggerty,* 128 App. Div. 479, [112 N. Y. Supp. 1017]; affirmed, 194 N. Y. 550, [87 N. E. 1120]; *Matter of Hoffman,* 161 App. Div. 836, [146 N. Y. Supp. 898]; affirmed, 212 N. Y. 604, [106 N. E. 1034]; *Matter of Chapman,* 61 Misc. Rep. 593, [115 N. Y. Supp. 981]; 133 App. Div. 337, [117 N. Y. Supp. 679]; 138 App. Div. 923,

[123 N. Y. Supp. 1110]; affirmed, 196 N. Y. 561, [90 N. E. 1157]; 199 N. Y. 562, [98 N. E. 1118].)

We therefore hold that the title of the remaindermen dates from December 17, 1912, and that the case is controlled by the statute of 1911, for it is settled law that [2] "it is the vesting in interest which constitutes the succession, and the question of liability to such a tax must be determined by the law in force at that time." (*Hunt* v. *Wicht*, 174 Cal. 205, [L. R. A. 1917C, 961, 162 Pac. 639]; *Estate of Gurnsey*, 177 Cal. 211, [170 Pac. 402]; *Nickel* v. *State*, 179 Cal. 126, [175 Pac. 641]; *In re Brix's Estate*, 181 Cal. 667, [186 Pac. 135].)

In reaching the foregoing conclusions we have not stopped to consider what or to what extent powers may be validly exercised in this state, for if the power of appointment reserved in the deed had been invalid, then the remaindermen would have taken indefeasible instead of defeasible vested remainders. (*Estate of Dunphy*, 147 Cal. 95, [81 Pac. 315].)

We therefore hold that the tax attaches unless the transfer was made upon an adequate and valuable consideration, to which we now address ourselves.

On December 17, 1912, the only interest which the ten children had in their father's share in his father's estate arose from the possibility that he might die before the trust terminated and in that event the ten children would take the share. The trust was certainly to terminate on February 1, 1915, and might terminate earlier. The ten children had nothing to surrender but this possibility of ownership, but they did not even surrender that possibility, for the transfer of December 17, 1912, provided that if Albert M. Murphy died before February 1, 1915, the property should go to the ten children. Hence, they gave nothing in the transfer of December 17, 1912. Considering that Albert M. Murphy lived till October 19, 1915, he gave the remainders created in the transfer of December 17, 1912, to his wife and children without any valuable consideration at all.

Counsel for respondents argue, however, that if the father had died before the termination of the trust of 1905 the effect of the trust conveyance of December 17, 1912, upon the children would have been that the property which they were entitled to after the termination of the trust of 1905

would be found to be burdened with another trust, the trust of 1912, to endure. Out of this contingent possibility, which never happened, counsel for respondents seek to work out a valuable and adequate consideration for the vested remainders which were conveyed to the remaindermen by the decedent in the trust conveyance of December 17, 1912.

[3] This alleged consideration is very unsubstantial, and we cannot regard it as adequate, and might upon analysis find it to be merely nominal.

We come now to the third question.

[4] Albert M. Murphy was a nonresident of California December 17, 1912, so the transfer is taxable only in so far as he conveyed California assets. The record indicates with sufficient clearness that California assets were included amongst those conveyed by the deceased in trust on December 17, 1912, and the order from which this appeal is taken is not being defended on the ground that no California assets were transferred at that time.

The order appealed from is reversed, with instructions to the lower court to impose the tax provided for in the act of 1911 upon the California assets which were included amongst the properties transferred in trust by the decedent December 17, 1912.

One of the ten children died after December 17, 1912, and before the death of his father, Albert M. Murphy, October 19, 1915, but whether the remaindermen taking as a class were reduced to ten, or whether the heirs at law or devisees of the will of this deceased son of Albert M. Murphy are to pay the tax, is a matter to be adjusted in the court below.

Order reversed.

Olney, J., Shaw, J., Wilbur, J., Angellotti, C. J., Lennon, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred, except Olney, J., who voted for rehearing, and Sloane, J., who did not vote.