[L. A. No. 5843. In Bank.—June 17, 1921.]

JOHN S. CHAMBERS, as Controller, etc., Respondent, v. ELIZABETH LAMB, Appellant.

[1] INHERITANCE TAX—TRANSFER OF COMMUNITY PROPERTY—CONTEMPLATION OF DEATH—LIABILITY TO TAXATION UNDER ACT OF 1905.— Under the inheritance tax law of 1905 (Stats. 1905, p. 341), the fact that property conveyed by a husband to a wife in contemplation of death was community property did not exempt it or any portion thereof from taxation.

[2] ID.—TRANSFERS INTER VIVOS IN CONTEMPLATION OF DEATH TAXABLE.—In view of section 1 of the inheritance tax law of 1905, which provides for a tax on transfers made in contemplation of the death of the grantor, or intended to take effect in possession or enjoyment after such death, a transfer is taxable when accompanied by an intention that it shall take effect immediately and irrevocably if, at the time of the transfer, the transferor is in that particular state of mind technically known as in contemplation of death.

[3] ID.—TRANSFER SUBJECT TO TAXATION—WHAT CONSTITUTES.—In view of the fact that it is the vesting in interest of the rights passing between the parties which constitutes the transfer taxed by the inheritance tax law, the death of the transferor adds nothing to the transfer if full rights have passed to the grantee prior to that time.

1. Succession tax upon gift or transfer in contemplation of death, notes, 14 Ann. Cas. 109; Ann. Cas. 1915B, 1089; 18 L. R. A. (N. S.) 458; 46 L. R. A. (N. S.) 790.

[4] ID.—TRANSFER IN CONTEMPLATION OF DEATH—IMMEDIATE TITLE AND CONTROL TO GRANTEE — BASIS OF TAXATION — VALUATION AT TIME OF DELIVERY OF DEED.—Under the inheritance tax law of 1905, where a husband made a conveyance of community property to his wife in contemplation of death and gave her complete dominion and control over the property at the time of the delivery of the deed, the property should be valued for the purposes of the tax, as of the date of the delivery of the deed and not as of the date of the death of the grantor, and the increase in value between the date of such delivery and the date of the death of the grantor is not to be rated as part of the taxable value.

[5] ID.—TAX UPON SUCCESSION—MEANING OF TERM.—In view of the fact that the tax imposed by the Inheritance Tax Act of 1905 is not limited to transfers taking effect upon the death of the transferor but includes gifts *inter vivos* in contemplation of death, the statement in the decided cases that the tax is upon the "succession" is not to be taken as using such word in the limited sense of the acquisition of rights upon the death of another, but as synonymous with "transfer" as defined by the inheritance tax acts.

APPEAL from an order of the Superior Court of Orange County fixing amount of inheritance tax. W. H. Thomas, Judge. Modified.

The facts are stated in the opinion of the court.

R. Y. Williams and A. W. Rutan for Appellant.

John W. Carrigan, Edwin W. Pennock, Harold R. Smith and Robert A. Waring for Respondent.

Garret W. McEnerney, *Amicus Curiae.*

LENNON, J.—The present appeal is taken from an order fixing the amount of an inheritance tax to be paid to the state of California by Elizabeth Lamb, defendant and appellant. At the hearing in the court below, plaintiff, John S. Chambers, as controller of the state of California, and Elizabeth Lamb, defendant, stipulated as follows: In February, 1909, William D. Lamb executed and delivered to Elizabeth Lamb, his wife, a deed conveying to the latter full title to certain community property, complete dominion and control of the said real property passing from the hus-

band to the wife at the time of the delivery of the deed. The deed was executed in contemplation of death. It was recorded in 1910, and the husband died in 1911. In February, 1909, the full market value of the property described in the deed was $194,775, but in the interval between the delivery of the deed and the death of William D. Lamb, in 1911, the value enhanced to $212,775, an increase of eighteen thousand dollars. The trial court decreed that the value of the property at the date of decedent's death was the valuation to be placed upon the property in computing the inheritance tax, allowed a deduction of $3,854.44 for state and county taxes for the fiscal year 1911–12, and fixed the amount of the tax at $4,248.01. Appellant claims that the value of the property at the date of the delivery of the deed should be taken as the basis for the computation of the tax and, therefore, that the amount of the tax fixed by the trial court exceeds the amount actually due from appellant by $450, or two and one-half per cent of eighteen thousand dollars.

It is conceded that the deed was made in contemplation of death and that the imposition of the tax in the instant case is controlled by the terms of the "Inheritance Tax Law" of 1905 (Stats. 1905, p. 341). [1] The fact that the property conveyed to the wife was community property does not exempt any portion thereof from the inheritance tax imposed by the act of 1905. (*Estate of Moffitt*, 153 Cal. 359, [20 L. R. A. (N. S.) 207, 95 Pac. 653, 1025]; *Estate of Sims*, 153 Cal. 365, [95 Pac. 655].) It is further conceded that the "Inheritance Tax Act" of 1905 does not in exact terms prescribe whether the tax should be measured by the value of the property at the date of the transfer or at the death of the transferor in the case of a transfer in contemplation of death such as in the present case. The portions of the act of importance for present purposes are: "Section 1. All property which shall pass by will or by the intestate laws of this state . . . which property, or any part thereof, shall be within this state, or any interest therein, or income therefrom, which shall be transferred by deed, grant, sale, or gift, made in contemplation of the death of the grantor, vendor or bargainor, or intended to take effect in possession or enjoyment after such death . . . shall be and is subject to a tax hereinafter provided for

. . . ; and such tax shall be and remain a lien upon the
property passed or transferred until paid . . . The tax so
imposed shall be upon the market value of such property
at the rates hereinafter prescribed and only upon the excess
over the exemptions hereinafter granted. Section 7. All
taxes imposed by this act, unless otherwise herein pro-
vided for, shall be due and payable at the death of the
decedent.'' Section 5 of the act, which in effect requires
an appraisal as of the date of the death of the transferor,
is limited to future, contingent, or limited estates and has
no application to transfers, such as that in the instant case,
which do not create estates of that character. (*Estate of
Miller,* 184 Cal. 674, [195 Pac. 413, 418].)

We have, therefore, a taxable transfer *inter vivos* passing
property the value of which changed between the date of
the transfer and the death of the transferor, and a transfer
tax act containing no express provision as to which valua-
tion shall be adopted in ascertaining the amount of the tax.
Which valuation is the more logical as a basis for measuring
the tax is the question for solution.

[2] Section 1 of the act of 1905 provides for a tax on
transfers ''made in contemplation of the death of the
grantor . . . *or* intended to take effect in possession or en-
joyment after such death.'' (Italics ours.) Therefore, a
transfer is taxable under the statute of 1905 when accom-
panied by an intention that it shall take effect immediately
and irrevocably if, at the time of the transfer, the trans-
feror is in that particular state of mind technically known
as ''in contemplation of death.'' In other words, the term
''transfers in contemplation of death,'' as used in the act of
1905, includes transfers *inter vivos.* (*Estate of Reynolds,*
169 Cal. 600, [147 Pac. 268]; *Spreckels* v. *State,* 30 Cal.
App. 363, [158 Pac. 549]; *State* v. *Pabst,* 139 Wis. 561,
[121 N. W. 351].) It follows that rights acquired under
a taxable transfer may vest prior to the death of the trans-
feror. Under the general scheme of our inheritance tax
laws and the interpretation accorded them by the courts,
signal significance is attached to the time of the actual vest-
ing of rights. [3] It is the vesting in interest of the
rights passing between the parties which constitutes the
transfer taxed by the act. (*Estate of Kennedy,* 157 Cal.
517, [29 L. R. A. (N. S.) 428, 108 Pac. 280]; *Hunt* v.

*Wicht*, 174 Cal. 205, [L. R. A. 1917C, 961, 162 Pac. 639].)
The death of the transferor adds nothing to the transfer if
full rights have passed to the grantee prior to that time.
Upon this reasoning it was held in *Hunt* v. *Wicht, supra,*
that, when rights under the transfer vest prior to the
death of the transferor, the law in effect at the time of the
vesting of the rights, and not that in force at the date
of the death of the transferor, is the law which governs
the tax. Similarly, in *Felton's Estate,* 176 Cal. 663, [169
Pac. 392], it was held that the amount of the tax must be
assessed according to the rates prescribed by the statute in
force at the time the transfer took effect and not accord-
ing to the rate fixed by a later statute in force when the
transferor died. In the instant case it is stipulated that
full title, control, and enjoyment passed to the grantee in
1909, at the time of the delivery of the deed. In other
words, as stated in *Hunt* v. *Wicht, supra,* "the succession to
the property by the grantee, which is the thing attempted
to be taxed, was complete upon the delivery of the deed."
[4] Logic and consistency compel the conclusion that the
property should be valued, for the purposes of the tax, as
of the date of the delivery of the deed.

Any other interpretation would be contrary to the spirit
of the act of 1905. Thus, section 1 of the act provides that
all *property transferred* by deed in contemplation of death
is subject to taxation and that "the tax so imposed shall be
upon the market value of such property." Section 28 of
the act defines "property" as "the real and personal prop-
erty or interest therein of the . . . grantor, . . . passing or
transferred to individual . . . grantees." The word "trans-
fer" is defined as including "the passing of property or
any interest therein, in possession or enjoyment, present or
future, by inheritance, descent, devise, succession, bequest,
grant, deed, bargain, sale, gift or appointment in the manner
herein described." Concisely stated, the basis for the mea-
surement of the tax is the market value of that which
changes hands as the result of the act of transfer. Apply-
ing these provisions and definitions to the instant case, the
tax is imposed upon the market value of the real property
passing by the deed of William D. Lamb. One hundred
and ninety-four thousand seven hundred and seventy-five
dollars was the value of the property which thus passed to

the transferee. While the property had attained the value of $212,775 at the time of the death of the transferor, the additional eighteen thousand dollars was not part of the value of the property "passing" from the grantor to the grantee; it was an increase in value subsequent to the transfer and during a period when the transferee was the owner thereof. The value of the property passing between the parties being the basis for the tax, the increase in value after the actual vesting of rights under the transfer is not to be rated as part of the taxable value.

The authorities cited by respondent in support of the contention that the property should be valued as of the date of the death of the transferor are not in conflict with the rule above announced. In *Matter of Davis,* 149 N. Y. 539, [44 N. E. 185], it was determined that an estate in remainder created by will must be appraised as of the date of the transferor, when title vested, and not as of the date of the death of the life tenant, when possession passed. In *Felton's Estate,* 176 Cal. 663, [169 Pac. 392], property was valued as of the date of the death of the transferor, although title passed prior thereto. It appears from the opinion in that case that the question here under discussion was not there raised, and there is nothing to indicate that the property involved in that case altered in value between the time of the transfer and the date of the death. That case cannot, therefore, be considered as passing upon the point here in issue.

[5] The argument is advanced by respondent that the cases hold that the inheritance tax is upon the succession, rather than upon the property (*Estate of Kennedy,* 157 Cal. 517, [29 L. R. A. (N. S.) 428, 108 Pac. 280]; *Hunt* v. *Wicht,* 174 Cal. 205, [L. R. A. 1917C, 961, 162 Pac. 639]), and that "succession" can occur only upon the death of the transferor. This argument is due to a misunderstanding of the meaning of the term "succession" as used in the cases quoted. Succession is defined in section 1383 of the Civil Code as "the coming in of another to take the property of one who dies without disposing of it by will." It frequently possesses the somewhat broader meaning of "the acquisition of rights upon the death of another." As previously stated, however, the tax imposed by the act of 1905 is not limited to transfers taking effect upon the death of

the transferor, but includes gifts *inter vivos* in contemplation of death. The statement that the tax is upon the "succession" would, therefore, be incorrect if that term were used in the limited sense of the acquisition of rights upon the *death* of another, and it is obvious that the word "succession" appearing in the cases cited is synonymous with "transfer" as defined by the inheritance tax acts.

The fact that the tax is "due and payable" upon the death of the transferor is not inconsistent with the rule that the liability for the tax attaches whenever the transfer is completed. The imposition of a tax and its maturity are commonly regarded as distinct and separate stages in the process of taxation. (*County of San Diego* v. *County of Riverside*, 125 Cal. 495, [58 Pac. 81]; *Frost* v. *State*, 153 Ala. 654, [45 South. 203]; *Westhus* v. *Union Trust Co.*, 164 Fed. 795, [90 C. C. A. 441].)

The case is remanded, with directions to the trial court to modify the order appealed from in accordance with the above.

Shaw, J., Wilbur, J., Sloane, J., Lawlor, J., and Angellotti, C. J., concurred.