[Civ. No. 12011.   First Dist., Div. One.   July 1, 1942.]

HARRY B. RILEY, as State Controller, etc., Respondent, v. HAROLD ZELLERBACH et al., Appellants.

Philip S. Ehrlich, Orrick, Dahlquist, Neff & Herrington, Albert A. Axelrod, Julien R. Bauer and Orville A. Rohlf for Appellants.

James W. Hickey, A. W. Brouillet and Hugo P. Correll for Respondent.

KNIGHT, J.—This is an appeal by taxpayers from a decree fixing the amount of an inheritance tax.

In 1923 Arthur Zellerbach, uncle of appellants, created two irrevocable trusts whereby he transferred certain shares of stock to trustees, expressly reserving to himself a life income in the property and providing for a vested remainder over on his death of the corpus to appellants. He died in 1937, and between the date of the creation of the trusts and the date of his death other stock and other trustees were substituted in the trusts. At the time of the creation of the trusts in 1923 the value of the property subject thereto was $142,000; whereas its value at the date of the termination

of the trust in 1937 was $403,739.69. It was agreed for all the purposes of this particular case that the Inheritance Tax Act of 1921 (Stats. 1921, p. 1500; Deering's Gen. Laws, 1923, Act 8443) governed the taxability of the transfers in question; and the legal problem involved was whether the tax to be imposed should be computed on the value of the trust property as of the date of the creation of the trust in 1923, or as of the date of the death of the decedent in 1937 when appellants came into the possession and enjoyment of the property. If computed on the 1923 value the total tax would be $1,154.91, but if computed on the 1937 value the tax would be $39,162.71. The trial court held that the tax should be computed as of the date of the death of the trustor in 1937, and fixed the amount of the tax accordingly.

In support of the trial court's decision and in accordance with its written opinion giving the reasons therefor, the respondent contends that *Estate of Miller,* 184 Cal. 674 [195 Pac. 413, 16 A. L. R. 694], is decisive of the question here presented, and we are in accord with such view. There the decedent died in 1916. In 1913 he had executed a deed of trust to his daughter and her husband as trustees, assigning to them 120,000 shares of the capital stock of Miller and Lux Company, a Nevada corporation. By the trust instrument the decedent reserved a life estate in the property, followed by a life estate in the daughter and her husband, with a remainder over in fee. Subsequent to the transfer but before the decedent's death both the federal government and the State of Nevada levied a death tax on the transfer; and in fixing the amount of the inheritance taxes on the transfer under the California law (the Inheritance Tax Act of 1911) the question arose whether the federal and Nevada state taxes could be deducted in determining the clear market value of the property subject to the California inheritance tax. If the value was to be taken as of the date of the transfer, the deduction would not be allowed, but if the property were to be valued at the date of the death of the grantor it would be allowed. For the purposes of its decision the Supreme Court assumed the validity of the federal and Nevada taxes, amounting to some $4,048,000. The court stated that the question presented was ''as to whether under our own statute the tax in this case is to be computed upon the value of the

beneficial interests transferred as of the date of transfer, or as of the date of the death of Miller, the transferor." It will be noted that this is the identical question presented in the present case; and the court there held that the property should be valued as of the date of the death of the trustor. In so holding the court in part said: "There is no declaration in the statute as to what shall be the rule when the dates are not the same, i. e., when a taxable transfer is made prior to the death of the transferor. The statute, however, does contain a provision which closely approaches a declaration that the valuation of future, contingent, or limited estates, created by the transfer, shall be as of the date of death. Such estates were created by the transfer here involved. . . . The provision of the statute referred to is the portion of section 5 reading, . . ." quoting section 5, which is identical to section 8 (1) of the 1921 act here governing. The court goes on: "This provision is plainly one for the valuation of future, contingent, or limited estates. It appropriately requires an appraisal, both of the property as a whole out of which such estates are carved, and of the particular estates into which it is carved. . . . The provision of section 5, particularly significant upon the point under discussion, is that the appraisal in such cases, whether the taxable transfer be by death or *inter vivos*, be made 'immediately after the death of the decedent.' This, of course, is literally a provision as to the time of actually making the appraisal, not as to the time as of which it shall be made. . . . At the time when the statute requires the appraisal to be made, the death upon which the estates to be valued depend has actually occurred, and the natural and reasonable method of computing their value would be to take the actual date of death. . . . We think it fairly certain, therefore, that when the statute provides that in such cases as the present the appraisal is to be made immediately after the death of the transferor, it contemplates and requires that the appraisal be on the basis of the actual date of his death and, therefore, of necessity, as of that date." As stated, section 8 (1) of the 1921 act is identical with section 5 of the 1911 act referred to in the Miller case (with the exception of the reference to certain sections which have been renumbered). From the foregoing it will be seen that the decision therein is directly in point and therefore here controlling.

Furthermore, in deciding the Miller case, the court held

that the California inheritance tax was a succession tax—a tax on the beneficial interest of each beneficiary or heir; whereas the federal tax is an estate tax imposed upon the net estate of the deceased as a unit; that therefore the federal tax must be deducted in order to determine the amount upon which the state tax should be levied "since it is plain that what the transferee receives is only the portion of what the decedent left which remains after the federal tax is taken." "It is the settled law of this state that the inheritance tax is imposed upon the net clear market value of what the transferee receives, and that to ascertain this the value of what he does not receive, in contemplation of law, must be deducted from the value of what the decedent left. The application of this principle plainly requires the deduction of the federal estate tax." This same reasoning applies here; the inheritance tax is imposed upon the net clear market value of what the transferee receives. In the Miller case the beneficiaries received less than actually transferred on account of the deduction of the federal and Nevada taxes; while here they receive more because of the increase in the value of the trust property subsequent to the transfer.

Appellant contends, however, that in *Chambers* v. *Lamb,* 186 Cal. 261 [199 Pac. 33], which was under consideration at the time the Miller case was decided, the court declared a doctrine inconsistent with that announced in the Miller case. An analysis of the two cases shows otherwise. In *Chambers* v. *Lamb* the decedent executed a deed in 1909 in contemplation of death which transferred certain property. The deed was recorded in 1910, and decedent died in 1911. The grantor retained no rights in the property transferred. The 1905 act governed the transfer. The question arose as to whether the property should be valued as of the date of the delivery of the deed or the death of the grantor. It was there stipulated, however, ". . . that full title, control, and enjoyment passed to the grantee in 1909, at the time of the delivery of the deed" and the court held therefore that "Logic and consistency compel the conclusion that the property should be valued, for the purposes of the tax, as of the date of the delivery of the deed." In other words, the date of the transfer happened to be also the date when the beneficial enjoyment commenced, since the transferee went into immediate possession and enjoyment; but it was this latter factor rather than the date of the transfer which controlled.

As said by the trial court herein in its written opinion: "Both cases [the Miller and the Lamb cases] were decided by the same justices within less than six months of each other and both recognize the distinction between the transfer *inter vivos* of a fee simple in contemplation of death and the transfer of a remainder subject to a life estate in the transferor. In *Estate of Miller* the court applied one rule in the case of a remainder, recognizing and expressly stating that a different rule might apply in the case of a transfer *inter vivos* of a fee simple in contemplation of death. (184 Cal. at pp. 686-687.) In the Lamb case the court distinguished but did not disapprove the Miller case. (186 Cal. at p. 264.) The Supreme Court simply adopted different rules for the two cases and the Legislature, with presumptive knowledge of both decisions, substantially reenacted section 5 of the previous act into subdivision 1 of section 8 of the present act, thereby in effect adopting the rule of the Miller case." In the Chambers case the court in pointing out the factual distinction between the two cases says: "Section 5 of the act, which in effect requires an appraisal as of the date of the death of the transferor, is limited to future, contingent, or limited estates and has no application to transfers, such as that in the instant case, which do not create estates of that character. (*Estate of Miller*, 184 Cal. 674 [195 Pac. 413, 418, 16 A. L. R. 694].)" The Miller case likewise makes plain the distinction between the two kinds of cases, wherein it is said: "We should, perhaps, say that the conclusion so reached, based, as it is, on the particular provisions of section 5 as to the appraisal of future, contingent, or limited estates, does not involve a determination of the question as to whether .it is the date of transfer or the date of death of the transferor as of which the appraisement should be made in cases of taxable transfers *inter vivos* which do not create estates of that particular character. That question is not involved here, and should not be determined."

Nor is there any merit in appellants' contention that the doctrine of the Miller case was in effect abrogated by the decision in the *Estate of Potter*, 188 Cal. 55 [204 Pac. 826]. The majority opinion therein makes no reference whatever to the Miller case, nor is there any language used therein indicating an intention to reject the doctrine of the Miller case.

Appellants argue that the decision in the Miller case is

founded on an obviously strained construction of the 1911 act, which is explained by the desire of the court to give the transferee the benefit of large estate and inheritance taxes paid the federal government and the State of Nevada; and that it is no longer necessary to perpetuate the strained construction to reach this result, because the act was subsequently amended to provide for deduction of other taxes paid. Irrespective, however, of the reasons which may have induced the court to arrive at its decision, the doctrine therein declared has not been altered or rejected by any later decisions, either expressly or by implication, and until that is done the decision therein stands as the law. Furthermore it cannot be said that the doctrine of the Miller case is inequitable, because while valuation as of the date of the death gives the state the benefit of a larger tax where the property has increased in value, a decrease in value results in a smaller tax, and the taxpayer thus benefits in not being compelled to pay a tax on a value which he has never enjoyed in possession.

Appellants argue also that since immediately after the Miller case was decided the Legislature amended the act so as to allow the deduction of federal estate and inheritance taxes and state inheritance, succession and transfer taxes, from the market value of the property transferred, it "repudiated the means by which the court in Estate of Miller achieved the result, but sanctioned the result." Inasmuch, however, as the amendment conformed to the doctrine of that case and was not inconsistent therewith, it must be deemed that the amendment was intended as a ratification of the doctrine rather than a repudiation thereof.

Paraphrasing section 2 of the 1921 act, it provides that a tax is imposed on the transfer of property, "said taxes to be upon the market value of such property" when the transfer is made in contemplation of death or intended to take effect in possession or enjoyment at or after death. Then follows this sentence: "When such person, institution or corporation becomes beneficially entitled in possession or expectancy to any property or the income therefrom, by any such transfer, whether made before or after the passage of this act." (As will be noted, the sentence is not complete grammatically, and in *Estate of Potter, supra,* it was held that the sentence should be separated from the matter which preceded it by a comma, rather than a period.) Appellants argue that the quoted provision constitutes an express dec-

laration that property transferred *inter vivos* is to be valued as of the date of transfer. They contend that it means that when a person is entitled ''in expectancy'' by any transfer the property is to be valued as of the date he becomes entitled in expectancy, that is, the date of transfer. The negative answer to this contention is to be found in those portions· of the decisions in the Miller and Chambers cases above quoted, wherein it is held that future, contingent or limited estates such as we have here, are to be governed by section 5 (section 8 (1) of the 1921 act), rather than by section 1 (section 2 of the 1921 act).

Appellants further contend that there is a change in the 1921 act which permits of reaching a different conclusion from that reached under the 1911 act, involved in *Estate of Miller*. The only change which is here pertinent is in the position of the provision to the effect that the tax is upon the market value of the property, and it is apparent that such change in position will not permit giving a different interpretation under the 1921 act from that given under the 1911 act.

The decree is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 27, 1942.