Opinion
SIMS, Acting. P. J.
—The State Controller has appealed from an amended order fixing inheritance tax which sustained the executors’ objections to the amended report of the inheritance tax appraiser. It deleted and reduced the clear market value of the property, subject to inheritance tax in the estate of the resident decedent, by the gross value of the remainder interest of an irrevocable trust, in which he retained a life interest, created by the decedent when a nonresident, 40 years before his death. The Controller states the issue as follows: “Are the remainder interests taxable under the California inheritance tax law where, as Trustor, a resident of the State of Nevada executed an irrevocable trust (intangibles) with a New York trustee reserving to himself all income for the duration of his life and thereafter he becomes and dies a resident and domiciliaiy of California?” The executors, in a more specific analysis, focus on the two following issues: “1. May an inheritance tax statute be applied retroactively to tax a lifetime transfer that was completed and vested in interest before the effective date of such statute?” and “2. Was the lifetime transfer in this case subject to inheritance tax under the statute in effect when such transfer was completed and vested in interest?”
The stipulated facts reflect that the decedent on October 28, 1930, then a resident of Nevada, created an irrevocable trust with a corporate fiduciary in New York as trustee. At all times the corpus of the trust consisted solely of cash and securities located in New York and administered by the corporate trustee in New York.
The trust provided for the payment of the net income to the decedent during his life. Upon his death the trust was to be divided into four equal shares, one for each of his children. Each child was to receive the net income from his or her trust during his or her lifetime, and to have a *724 general power of appointment exercisable by will over the residue. Upon the child’s death, the unappointed portion of his or her trust would pass to the persons who would take under New York’s intestacy laws, with special provisions for one of the decedent’s sons. Only two of the decedent’s four children were living at the date of the decedent’s death. (The inheritance tax report reflects that he died July 2, 1970.) They each received a life estate in the trust (sic, one-fourth share of the trust) with a general power of appointment over the residue. The shares that otherwise would have passed to the deceased children of the decedent, passed outright ,to their respective children in equal shares.
Because the decedent was a resident of California at the date of his death, the inheritance tax referee included this trust in computing the California inheritance tax due. The gross value of this trust at the date of decedent’s death, as determined by the referee, was $367,946.02. The referee taxed this trust by dividing the net value (gross value less his referee’s fees) by four, and taxing a full share thereof to decedent’s surviving daughter and to his surviving son, and proportioning the remaining two shares among the respective grandchildren who received the sháres of their deceased parents. The total inheritance tax imposed upon the beneficiaries of this estate was $126,317.71. The inclusion of this trust increased the total inheritance tax due by approximately $27,204.63.[1]
I
The pertinent provisions of the inheritance tax law in effect at the time of the decedent’s death provide as follows:
Section 13303: “ ‘Estate’ or ‘property’ means the real or personal property or interest therein of a decedent or transferor, and includes all of the following: [11] (a) All intangible personal property of a resident decedent within or without the State or subject to the jurisdiction thereof....”
Section 13305: “‘Decedent’ or ‘transferor’ means any person by or from whom a transfer is made, and. includes any testator, intestate, grantor, bargainor, vendor, assignor, donor, joint tenant, or insured.”
Section 13641: “If a transfer specified in this article was made during lifetime by a decedent, for a consideration in money or money’s worth, but the transfer was not a bona fide sale for an adequate and full *725 consideration in money, or money’s worth, the amount of the transfer subject to this part shall be the excess of [1Í] (a) The value, at the date of the transferor’s death, of the property transferred, over [If] (b) An amount equal to the same proportion of the value, at the time of the transferor’s death, of the property transferred which the consideration received in money or money’s worth for the property transferred bears to the value, at the date of transfer, of the property transferred.”
Section 13643: “A transfer conforming to Section 13641 and made with the intention that it take effect in possession or enjoyment at or after the death of the transferor is a transfer subject to this part.”
Section 13644: “A transfer conforming to Section 13641 and under which the transferor expressly or impliedly reserves for his life an income or interest in the property transferred is a transfer subject to this part. Such a reservation shall be conclusively presumed where the transferor retains the possession or enjoyment of the income or interest in the property transferred until his death.”
Section 13648: “It is hereby declared to be the intent and purpose of this part to tax every transfer made in lieu of or to avoid the passing of property by will or the laws of succession.”
Section 13951: “For the purpose of this part, the value of property included in any transfer subject to this part, whether or not the transfer was made during the lifetime of the transferor, is the market value of the property as of the date of the transferor’s death.”
Section 13952: “In the case of a transfer of any estate, income, or interest (a) for a term of years or for life, or (b) determinable upon any future or contingent event, or (c) constituting a remainder, reversion, or other expectancy, the entire property by which the estate, income, or interest is supported, or of which it is a part, is valued as of the date of the decedent’s death.”
From the foregoing it is apparent that the Legislature has attempted to bring with the scope of the Inheritance Tax Law all and any inter vivos transfers which may effect a gift of property in lieu of a testamentary or intestate transfer at death. The nature and theory of the tax were spelled out by Justice (later Chief Justice) Traynor in Estate of Thurston (1950) 36 Cal.2d 207 [223 P.2d 12], as follows: “The inheritance tax is primarily a tax upon the succession to property at death. The statute expressly *726 includes as subjects of inheritance taxation transfers of property by will, succession, or survivorship, and transfers of the proceeds of life insurance. An inheritance tax limited to the taxation of transfers from the dead to the living, however, could be easily avoided. ‘The common and perhaps not unnatural aversion of property owners to the burdens of taxation appears to have applied with special force to the diminution of the estates left by them at death through the imposition of estate, inheritance, or succession taxes. The early statutes taxing property passing by will or inheritance were followed by resort to various means for avoiding subjection to the tax. Among the devices most simple and commonly resorted to were gifts in contemplation of death, and transfers, in trust or otherwise, whereby the transferor reserved to himself the life use or income for life. These artifices were met by provisions in the taxing statutes calculated to close such avenues of tax avoidance.’ (Blodgett v. Guaranty Trust Co., 114 Conn. 207, 211-212 . . .; other citations omitted.) Revenue and Taxation Code, sections 13641-13648, accordingly provide for the taxation of specified inter vivos transfers by which the owner of property retains such an interest therein or imposes such restrictions upon the use thereof that for tax purposes he is regarded as the owner of the property at his death and his transfer thereof as a testamentary disposition. ‘The statute taxes not merely those interests which are deemed to pass at death according to refined technicalities of the law of property. It also taxes inter vivos transfers that are too much akin to testamentary dispositions not to be subjected to the same excise.’ (Helvering v. Hallock, 309 U.S. 106, 112 ...; other citations omitted.) The tax is imposed on the inter vivos transfer but its collection is postponed until the death of the transferor, and it is measured by the market value of the transferred property at the date of his death. (Rev. & Tax. Code, § 13402; other citations omitted.)” (36 Cal.2d at pp. 209-211.) The court concluded that a transfer by which the transferor reserved a life estate in property would subject the property transferred to a tax under section 13644 at the time of the death of the transferor, if the reserved estate terminated on his death.[2] (Id., p. 211. See also Estate of Felton (1917) 176 Cal. 663, 669-670 [169 P. 392]; Estate of Murphy (1920) *727 182 Cal. 740, 743-744 [190 P. 46]; Chambers v. Gibb (1921) 186 Cal. 196, 197-198 [198 P. 1032]; Estate of Potter (1922) 188 Cal. 55, 58-59 [204 P. 826]; Estate of Madison (1945) 26 Cal.2d 453, 459 [159 P.2d 630]; Estate of Bielec (1972) 8 Cal.3d 213, 226 [104 Cal.Rptr. 516, 502 P.2d 12, 58 A.L.R.3d 1088]; Estate of Hyde (1949) 92 Cal.App.2d 6, 13-16 [206 P.2d 420]; and Estate of Moore (1972) 29 Cal.App.3d 481, 499 [105 Cal.Rptr. 568]. Cf. Estate of Gill (1971) 19 Cal.App.3d 496, 502-504 [96 Cal.Rptr. 786].)
In Estate of Madison, supra, the court had already upheld the taxability of transfers in trust made in 1935, after the adoption of the 1935 inheritance tax, as transfers intended to take effect in possession or enjoyment at death even though the transferor retained no life interest in the trust, but merely measured it by his life. The court said: “The issue is not whether the donor retained some power or interest until his death, but rather whether he tied up the property with so many strings, which could not be loosened until his death, that the transfer may be regarded as having been intended to take effect in possession or enjoyment at his death within the meaning of the statute. It should be noted at the outset that the statute speaks, not of title, but of possession and enjoyment. Were it not for worthy authority to the contraiy, a .gift of income for the trustor’s life with remainder at the trustor’s death would appear from the plain wording of the statute to be a transfer intended to take effect in possession or enjoyment at or after death.” (26 Cal.2d at p. 457.) It found he had. (26 Cal.2d at pp. 457-465. See also Estate of Huntzinger (1974) 38 Cal.App.3d 569, 574-578 [113 Cal.Rptr. 227]; Estate of Corda (1976) 57 Cal.App.3d 903, 911-912 [129 Cal.Rptr. 328]; and Estate of Crowell (1976) 56 Cal.App.3d 564, 567-573 [128 Cal.Rptr. 613].)
In Estate of Madison, Estate of Thurston, and the subsequent cases, there has been an emphasis on the shift in possession and enjoyment which occurs at the transferor’s death, rather than the shift in title at the time of the transfer. There has been recognition that the Supreme Court of the United States, which in May v. Heiner (1930) 281 U.S. 238 [74 L.Ed. 826, 50 S.Ct. 286, 67 A.L.R. 1244], ruled that the phrase “to take effect in possession or enjoyment at or after” the death of the transferor did not include an irrevocable transfer in trust in whifch the transferee had reserved a life interest, had reversed itself in Commissioner v. Estate of Church (1949) 335 U.S. 632 [93 L.Ed. 288, 69 S.Ct. 322]. (See Estate of Thurston, supra, 36 Cal.2d at p. 214; and Estate of Hyde, supra, 92 Cal.App.2d 6, 20-21.) In the case last cited, the late Justice Peters, then Presiding Justice of this court, in commenting on the principles quoted *728 above from Estate of Madison, stated: “That reasoning clearly indicates that in this state we have approved the modem, realistic view of such transfers, and abandoned the technical formalistic approach advocated by appellants and adopted by some courts.” (92 Cal.App.2d at p. 20.)
If the proposition were presented anew, we would have no hesitancy in holding that since the decedent came into this state voluntarily, he and his property, including intangibles in which he had retained an interest wherever situated, became subject to the laws of this state and to such taxation as this state might provide upon his death on the transfer of possession and enjoyment of any of such property. It was so held in Bunting v. Sullivan (1965) 152 Conn. 331 [206 A.2d 471], a case from the same court which decided the case referred to by Justice Traynor in expanding the principles upon which the taxation of inter vivos transfers rest. (Blodgett v. Guaranty Trust Co. (1932) 114 Conn. 207, 211-212 [158 A. 245, 246-247], as quoted in Estate of Thurston, supra, 36 Cal.2d at pp. 209-210.) In Bunting v. Sullivan, supra, the court rejected the contention that Connecticut could not tax the inter vivos trust, in which the decedent had retained a life interest, because it had been established while she was residing in another state 39 years before her death. The court stated: “While legal title to these intangibles had passed to the trustees in 1922, the equitable life estate in them remained in [the transferor] with a remainder in-her named beneficiaries to take effect on her death. At her death, this remainder was, by her direction, transferred to the possession and enjoyment of those beneficiaries, and that transfer is properly subject to the Connecticut succession tax.” (152 Conn, at p. 337 [206 A.2d at p. 474].)
Our task, however, is not so simple. As was Justice Traynor, we are faced with “worthy authority to the contrary”; and as an intermediate appellate court we must follow that authority unless it can be distinguished.[3]
*729 II
The executors rely upon the principle that under the law of this state an inheritance tax cannot be imposed retroactively to tax an inter vivos transfer that was completed and vested in interest before the effective date of such statute. In Hunt v. Wicht (1917) 174 Cal. 205 [162 P. 639], the state sought to recover an inheritance tax from the widow of a decedent who on April 12, 1905, had deposited a deed in escrow to be, and which was, delivered to her on his death April 18, 1913. At the time of the creation of the escrow the statute in effect (Stats. 1893, ch. 168, p. 193) purported to tax “all property which shall pass, by will or by the intestate laws of this State, ... or any interest therein or income therefrom which shall be transferred by deed, grant, sale, or gift, made in contemplation of the death of the grantor or-bargainor, or intended to take effect in possession or enjoyment after such death, to any person . .. other than to or for the use of his . . . wife, . . .” The court pointed out, “Concededly such a transfer may be taxed by the state. The difficulty in the case at bar is that at the time the deed was so executed and delivered to Mathilde Wicht in escrow there was no law imposing any tax on such a transfer as was here made. ... It is conceded here that the grantee was the wife of the grantor at the time of the execution and delivery of the deed in escrow, and'that if reliance must be based on the act of 1893, there is no liability for a tax on account thereof.” (174 Cal. at p. 207.)
The court then addressed the claim that the transfer was taxable under the 1911 Inheritance Tax Act (Stats. 1911, ch. 395, p. 713) which was in effect at the death of the transferor. It noted: “[T]hat act in terms provides for a tax on any transfer by deed ‘made without valuable and adequate consideration in contemplation of the death of the grantor, . . . or intended to take effect in possession or enjoyment at or after such death,’ when the party taking ‘becomes beneficially entitled in possession or expectancy to any property or the income therefrom, by any such transfer, whether made before or after the passage of this act.’ The words we have italicized are relied on as clearly showing an intention to impose the tax on transfers previously fully and effectually made. It may be conceded for the purposes of this decision that such was the intent. The question then is whether such a retroactive effect may lawfully be given to the statute. ... [H] We have then the case of a grant of land so executed and delivered on April 12, 1905, as to be fully operative and effective on that date to vest a present title in the grantee, subject only to a life interest in the grantor;,‘an executed conveyance’ (Estate of Cornelius, 151 Cal.
*730 550 . . .) of this property in fee simple absolute, subject only to this life interest.” (Id., pp. 207-208.)
The court concluded, “Could the legislature subsequently lawfully impose a succession tax upon this fully executed transfer of title, such tax accruing at the termination of the grantor’s reserved life estate, simply because in the meantime the grantee was debarred by the intervening life estate from actual possession of the property conveyed and the other incidents of a life estate? It appears to us that to state the question is to answer it. The succession to the property by the grantee, which is the thing attempted to be taxed, was complete upon the delivery of the deed in escrow, notwithstanding the reservation of the life estate. The whole estate conveyed vested irrevocably in interest at once, notwithstanding that actual possession of the property itself and enjoyment of the profits thereof were deferred until the death of the life tenant. His death added nothing to the title theretofore acquired by the grantee, and there was no transfer of any property in any legal sense at the time of such death, or at any time subsequent to the delivery in escrow. The right of the grantee to have actual physical possession of the property itself and enjoyment of the other incidents of an estate for life upon the death of the life tenant was absolutely vested by the delivery of the deed in escrow, and nondefeasible, and the legislature could not thereafter lawfully destroy, impair, or burden this property right under the guise of a succession tax on account of the transfer.” (Id., pp. 208-209. See also Estate of Felton, supra, 176 Cal. 663, 669 [must apply rate at time of transfer]; Estate of Murphy, supra, 182 Cal. 740, 746 [apply law at time of transfer to determine taxability]; Chambers v. Lamb (1921) 186 Cal. 261, 265 [199 P. 33] [value property at date of transfer, where absolute interest conveyed in contemplation of death]; Chambers v. Gibb, supra, 186 Cal. 196, 198 [apply law at time of transfer to determiae taxability]; Estate of Potter (1922) 188 Cal. 55, 59-76 [204 P. 826] [apply law at time of transfer to determine rates, exemption and right to cumulate]; Riley v. Havens (1924) 193 Cal. 432, 434-435 [225 P. 275] [limitation period fixed by law at time of transfer]; Estate of Madison, supra, 26 Cal.2d 453, 457 [principle recognized]; and Estate of Gill, supra, 19 Cal.App.3d 496, 501 [principle recognized].)
The Controller has recognized the principles alluded to above in regulations promulgated for administration of the Inheritance Tax Law (see Cal. Admin. Code, tit. 18, ch. 2.5, subch. 1). Regulations 13402-13408(e) recognize that provisions in the 1935 law that imposed a tax at the rates in effect at the transferor’s death on inter vivos transfers could *731 only be prospective in operation as to completed transfers made after June 25, 1935, the effective date of that act. (See also regs. 13402-13408(f)(3) and 13402-13408(g)(3) where another transfer or power of appointment is involved.) Regulation 13304(b) states: “The term ‘complete transfer’ includes any transfer under which the rights of the transferee are vested and the transferor does not reserve any power to revoke, terminate, alter, amend, revise, or change the interest of the transferee.’’ Similar provisions govern the determination of the exemption to be applied. (See regs. 13801-13804(b)(2), 13801-13804(c)(3) and 13801-13804(d)(3).)
On the other hand it was early recognized, and still is the law, that if the property the subject of the inter vivos transfer is subject to tax it will be taxed at its value at the time of the transferor’s death. (Estate of Felton, supra, 176 Cal. 663, 667; Estate of Miller (1921) 184 Cal. 674, 684-687 [195 P. 413, 16 A.L.R. 694]; and Riley v. Zellerbach (1942) 53 Cal.App.2d 196, 197-202 [127 P.2d 597]. Cf. Chambers v. Lamb, supra, 186 Cal. 261, 264-267 [absolute transfer in contemplation of death, valued at date of transfer].)
Examination of the cases sustaining the imposition of a tax on an inter vivos transfer in which the transferor reserved a life estate indicates that there has been no problem, except as to rates and exemptions in imposing a tax where the transferor was a resident both at the time he made the transfer and at the time he died. It may be assumed that a resident who created a trust such as that involved in this case on October 28, 1930, and who subsequently died July 2, 1970, without having surrendered that life estate, would subject the remainderman to the payment of inheritance taxes on the value of the trust corpus at the time of his death.
The Inheritance Tax Law of 1921, as amended at the time of the creation of this trust, provided as follows: “A tax shall be and is hereby imposed upon the transfer of any property, real, personal or mixed, or of any interest therein or income therefrom in trust or otherwise, to persons, institutions or corporations, not hereinafter exempted, to be paid to the treasurer of the proper county, as hereinafter directed, for the.use of the state, said taxes to be upon the market value of such properly at the rates hereinafter prescribed and only upon the excess over the exemptions hereinafter granted, in the following cases: . . . [1Í] (3) When the transfer is of property made by a resident, or by a nonresident when such nonresident’s property is within this state, by deed, grant, bargain, sale, *732 assignment or gift, made without valuable and adequate consideration (i.e., a consideration equal in money or in money’s worth to the full value of the property transferred): . . . [If] (b) Intended to take effect in possession or enjoyment at or after such death. [If] When such person, institution or corporation becomes beneficially entitled in possession or expectancy to any property or the income therefrom, by any such transfer, whether made before or after the passage of this act. [If] When the transfer is taxable under the provisions of paragraph (b) of subdivision (3) of this section, the value of the property transferred shall be taken as of the date of death of the transferor.” (Stats. 1929, ch. 844, §2, pp. 1835-1836.)
The executors claim that the transferees, as did Mrs. Wicht, received their vested, although unascertained, remainders in 1930 free of any claims of the State of California, and that therefore any attempt to tax them would be retroactive taxation such as was prohibited in Hunt v. Wicht. Estate of Murphy, 'supra, supports their position. There the court held that as the transferor who reserved a life estate was a nonresident of California on the date he made the transfer, the transfer was taxable only insofar as it was limited to California assets (182 Cal. 740, 743 and 747).
The Controller claims that the foregoing was unnecessary to the decision, because the record shows that the only assets which California is attempting to tax were in fact assets which had been in the state at the time the transferor created the life estate which gave rise to the inheritance tax. The executors claim that the matter was at issue, and that the court correctly interpreted the statutory language. (See part III below.)
It is quite obvious in this case that statute or no statute there was no taxable incident giving rise to any right for California to impose a tax or to gain a lien for a future tax when the transferor, a resident of Nevada, transferred intangibles to a trust in New York. That conclusion, however, does not dispose of the matter. When he established his residence in California he enjoyed the protection of the laws of this state as he reaped the income from the intangible property in New York. On his death the right to the possession and enjoyment of that income passed to those he had designated in the same manner as if he had retained the property during his lifetime and so disposed of it by will. It is not denial of equal protection to hold that upon becoming a resident of California he subjected all the intangible personal property which he owned to the same burdens as such personal property bore in the hands of his fellow *733 residents. If he was dissatisfied with the laws of this state he could have relinquished his life estate. Unlike Mr. Garms, he changed his status after making the transfer. For the reasons recognized in Estate of Thurston, supra, we conclude that, unless prohibited by statute, this state could properly and constitutionally tax the 1930 transfer when the possession and enjoyment of the income of the trust shifted from the transferor to the remainderman upon the former’s death in California. (36 Cal.2d at pp. 209-211. See also Commissioner v. Estate of Church, supra, 335 U.S. 632, 640-646 [93 L.Ed. 288, 296-299]; and Bunting v. Sullivan, supra, 152 Conn. 331, 335-338 [206 A.2d 471, 473-474].)
III
The decision in Estate of Murphy, supra, was predicated upon a transfer made in 1912, which was governed by the Inheritance Tax Law of 1911 (Stats. 1911, ch. 395, p. 713). It contained the same language as that found in the 1929 statute in reference to inter vivos transfers, to wit, “When the transfer is of property made by a resident, or by a non-resident when such non-resident’s property is within this state, . . .” (Id., § 1, p. 713.)[4] This language is said to indicate that any inter vivos transfer by a nonresident transferor of property that was not within the state is given a permanent exemption from the California inheritance tax, regardless of the fact that the transferor became a resident of California and remained so at the time of his death. (See Cal. Inheritance Tax Practice (Cont.Ed.Bar 1973) § 6.2, p. 126.) Each party has furnished the court with superior court decisions which reflect its position. That furnished by the executors, indicates that in 1953 the Controller took the position that a trust in which the nonresident trustor *734 received a life estate, would not subsequently become subject to the inheritance tax if the trustor, became and died a resident of the State of California. We are not inhibited by the foregoing materials. (3) “Moreover, an erroneous administrative construction does not govern the interpretation of a statute, even though the statute is subsequently reenacted without change.” (Estate of Madison, supra, 26 Cal.2d 453, 463.)
The rule that “statutes imposing taxes upon the persons or property of individuals for public purposes are to be strictly construed in favor of the individual and against the state” has been applied to prevent transfers not expressly authorized by the law, such as a family allowance under the 1917 act (Estate of Steehler (1925) 195 Cal. 386, 389-396 [233 P. 972]), and to preclude cumulating transfers and rates under the law in effect in 1916 (Estate of Potter, supra, 188 Cal. 55, 64-74). Here, however, the statutory intent is clear; we are merely attempting to determine the scope of constitutional restraints on the exercise of the Legislature’s unquestioned power to tax. Its acts are blessed with a presumption of constitutionality. (See 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 43, p. 3281.) Section 13648 mandates, “It is hereby declared to be the intent and purpose of this part to tax every transfer made in lieu of or to avoid the passing of property by will or the laws of succession.” (See Estate of Schmalenbach (1975) 15 Cal.3d 102, 108, fn. 9 [123 Cal.Rptr. 490, 539 P.2d 58].)
As we read the 1921 and subsequent acts the reference to a nonresident is superfluous unless it refers to the time of death. There would be no tax on a nonresident unless he left property within this state, and the various acts properly recognize that fact. If a nonresident makes a transfer of property not within this state and never becomes a resident of this state, there is no need to refer to him in the statute. The language as so construed would be superfluous and redundant. The reference to “lifetime” in the later acts is merely declarative of-the same concept. Unless the status of residence or nonresidence refers to the status of an individual at the time of death, the provisions would be meaningless. We conclude that the transferees of the decedent, unlike Mrs. Garms, did not receive a permanent exemption under the provisions of law in effect at the time of the transfer. They may have had an expectancy of enjoying the fruits of Nevada's liberal tax laws (see Estate of Fasken (1977) 19 Cal.3d 412, 419-420 [138 Cal.Rptr. 276, 563 P.2d *735 832]), but that expectancy was defeated by the transferor’s move to California.
Finally we note that the present law reads generally, “If a transfer specified in this article was made during lifetime by a decedent, . . .” (§ 13641, see fn. 3 above.) Section 13305 reads: “ ‘Decedent’ or ‘transferor’ means any person by or from whom a transfer is made, and includes any testator, intestate, grantor, bargainor, vendor, assignor, donor, joint tenant, or insured.” No distinction is made between nonresidents and residents. The intention is to tax all transfers which may constitutionally be taxed (§ 13648). For reasons set forth above, we believe that California may properly tax the shift in possession and enjoyment of the income of the property in this case, and the statutory provisions confer no exemption on the transferees who acquired those rights on the death of the resident transferor.
The amended order fixing inheritance tax is reversed and the case is remanded for further proceedings in accordance with the views expressed herein.
Elkington, J., and Lazarus, J.,* concurred.
A petition for a rehearing was denied December 5, 1977, and on December 1, 1977, the opinion was modified to read as printed above. Respondents’ petition for a hearing by the Supreme Court was denied January 26, 1978.

The foregoing sums set forth in the parties’ stipulation were reduced by an amended inheritance tax report to $ 118,350.10 and $20,303.10, respectively.

In Estate of Thurston, supra, the transferor surrendered his life estate, in one of the two parcels in which he had reserved that interest, by a transfer and relinquishment which was not in contemplation of death. As to that parcel the opinion states: “Although the inter vivos transfer is the subject of the tax (Helvering v. Hallock, supra, 112 [309 U.S. 106 (84 L.Ed. 604, 608, 60 S.Ct. 444, 125 A.L.R. 1368)]). its taxability is determined by the restrictions on the enjoyment and possession of the property at the death of the transferor, and not by the restrictions at the time of the transfer. If. notwithstanding that the transfer was taxable at the time it was made, the only retained interest upon which taxation may be predicated is extinguished before the death of the transferor, the inter vivos transfer is not subject to the inheritance tax.” (36 Cal.2d at p. 211.)

The authors of California Inheritance Tax Practice (Cont.Ed.Bar 1973) have recognized the problem in a section entitled Applicable Law: Date of Lifetime Transfer on Date of Death. (§ 6.2. p. 126.) They point out that the question of whether a transfer specified in section 13641 of property outside California, made by a nonresident who later moves to California and at his death is'domiciled here, is subject to inheritance tax at the transferor’s death, has not been decided since the 1969 amendment of section 13641 (see part III below). Compare Estate of Newton (1950) 35 Cal.2d 830 [221 P.2d 952. 19 A.L.R.2d 1399], where the court applied developing concepts of estate and inheritance taxation to overrule Estate of Bowditch (1922) 189 Cal. 377 [208 P. 282, 23 A.L.R. 735]. The latter case had held that California was without jurisdiction to impose a tax measured by the appraised value of intangibles held in New York which were the subject of a testamentary power of appointment exercised by the decedent.

The same language is found in the 1935 act. (Stats. 1935, ch. 358, § 2, subd. (3), p. 1268.) In 1943 when .the Inheritance Tax Law was codified in the Revenue and Taxation Code the commensurate provision was phrased as follows in section 13641: “Any transfer specified in this article made during lifetime by a resident or. if the property transferred is within this State, by a nonresident, by deed, grant, bargain, sale, assignment, or gift, without a valuable and adequate consideration, is a transfer subject to this part. . . .” (Stats. 1943. ch. 658. § 1. p. 2302.) In 1959 the section was amended to read: “If a transfer specified in this article is made during lifetime by a resident, or is made during lifetime by a nonresident of property within this State, for a consideration in money or money’s worth, but the transfer is not a bona fide sale for an adequate and full consideration in money or money’s worth, the amount of the transfer subject to this part shall be the excess of [c] (a) The value, at the date of the transferor's death, of the property transferred, over ["] (b) An amount equal to the same proportion of the value, at the time of the transferor’s death, of the property transferred which the consideration received in money or money’s worth for the property transferred bears to the value, at the date of transfer, of the property transferred.’’

Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.